ISIDOR GROSS *v.* JOHN OATIS ET AL.

1. DEED OF TRUST. *Assignment. Bona fide holder.*

> If the holder of a deed of trust indorses the same, and the note secured by it, and permits the possession of the instruments to pass, and the indorsee transfers the same for value to an innocent third party, the latter will acquire title thereto superior to any undisclosed equity in the original indorser.

2. SAME. *Junior incumbrancer.*

> The owner of a prior deed of trust on personal property to secure a sum greater than the value of the property, may acquire the property from the grantor in his deed freed from a junior lien on the same property.

3. SAME. *Innocent purchaser. Extent of right.*

> If a purchaser be a *bona fide* one for value, he is entitled not alone to be saved harmless to the extent of his money paid, but should be protected in the fruits of his bargain.

FROM the chancery court of Madison county.

HON. H. C. CONN, Chancellor.

Woodman & Bro. were indebted by note to appellant, Gross, in the sum of $1,459.75, and, in January, 1894, executed a deed of trust upon a number of cattle to secure the same. In January, 1895, after the maturity of said note, appellee, Oatis, having acquired an interest in the farm upon which Woodman & Bro. had carried on business, and in the cattle, applied to Gross for credit, and to arrange concerning the cattle upon which the latter held the deed of trust. It was agreed between them that credit would be extended, and that Gross would assign his claim on the cattle upon the payment to him by Oatis of $900, the payment to be made November 1, 1895. Thereupon Oatis executed a deed of trust upon certain personal prop-

erty, including the cattle, to secure Gross for the credit to be extended and said $900, it being understood that the Woodman & Bro. deed of trust should remain in force, and would be transferred, together with the note secured by it, to Oatis, upon the payment of the $900 and the sum to be advanced him. Gross then and there formally indorsed to Oatis the deed in trust and note given by Woodman & Bro., but whether there was ever a delivery was one of the disputed questions of fact in the case. Gross insisted that the instruments were not to be delivered until he was paid by Oatis; that the possession of the papers, which admittedly passed, were obtained from him fraudulently, and that he had never been paid in full. Oatis contended that he had fully complied with the terms upon which the writings were to be delivered, and that they were actually delivered to him, and were so delivered with the understanding and agreement that he might sell the cattle or assign the note and deed of trust in order to raise money.

Being in possession of the note and deed in trust, Oatis assigned the same to Mrs. Johnson for three hundred dollars cash, and Mrs. Johnson afterwards gave Woodman & Bro. ten dollars for a bill of sale, conveying their interest in the cattle to her, and she took possession and disposed of them, her husband acting for her in making the deals. The bill was filed by appellant, Gross, to enforce the deeds in trust for the balance, which he claimed to be due him from Oatis. The defendants were the makers of the deeds, Mrs. Johnson, her husband and one J. W. Johnson, a partner of the husband, who had participated in the conversion of the property. The court below decreed that Oatis owed Gross a sum exceeding five hundred dollars; that the cattle were worth four hundred and sixty dollars; that the Johnsons were innocent purchasers to the extent of three hundred and ten dollars, the cash actually paid by them, and rendered a personal decree in complainants' favor for one hundred and fifty dollars, against Oatis, Mrs. Johnson, her husband and J. W. Johnson. Complainant appealed, and the parties

against whom the personal decree was rendered prosecuted a cross appeal.

*F. B. Pratt*, for the appellant.

It is manifest that neither Oatis nor Woodman could successfully resist the claim of Gross on the cattle, being estopped by their conduct, etc. Can they convey any greater right to Johnson than they themselves possessed? By the acts of Woodman and Oatis, title to the cattle became vested by estoppel in Gross or at least in Gross's trustee in the deed of trust. The title of Woodman was divested. Can Woodman, having no title as against Gross, convey to Johnson any title? Is Johnson an innocent party? Is he a purchaser for value without notice? His own testimony, in connection with the testimony of his co-defendant, Oatis, and the testimony of wholly disinterested and uncontradicted witnesses shows that if he ever paid Oatis any money at all, he paid it after he had full notice of the claims of Gross. And even though this was not fully established, yet the circumstances under which he bought were so suspicious that any man would thereby be put upon inquiry.

*H. B. Greaves*, for appellees.

Estoppel by conduct arises from an act or declaration of a person interested, calculated to mislead another, on which that other has relied and has so acted, or refrained from acting, that injury will befall him if the truth of the act or declaration be denied (*Staton* v. *Bryant*, 55 Miss., 261); and where one actually misleads another, although innocently, the maxim is justly applied to him, "that where one of two innocent persons must suffer, he shall suffer, who, by his own acts, occasioned the confidence and loss" (1 Story Eq. Juris., pp. 367 and 387); and "where one puts the evidence of his lien into the debtor's hands, so as to enable him to represent it as extinguished, and thereby gain further credit upon the mortgage of the same property, the first lien will be postponed to the subsequent

one '' (1 Story Eq. Juris., sec. 390a, p. 382; Kerr on Frauds and Mistakes, pp. 138, 139, 140).

Where one of two innocent persons must suffer by the fraud of a third, he must suffer who put it in the power of such third person to defraud—as, where one permits another to hold himself out as the owner of property (7 Am. & Eng. Enc. L., p. 18, and see note 2, citing 94 N. W., 64; 55 N. Y., 41; 33 Ohio St., 178); and '' a man who permits himself to be made a tool of by another, in whose hands he had left the deed, cannot set up, as against a third party, who acted fairly and honestly in the transaction, that he had been deceived '' (Bump's Kerr on Frauds and Mistakes, pp. 138, 139).

I hold, and it seems to me founded on reason and common sense, that one buying a deed of trust which is an existing lien on personal (or real) property, is not required to go beyond his deed. I fully recognize the doctrine that one must take notice of everything appearing on the face of his title deed, and through which he claims; but can it be said with any show of sound reasoning, that a person buying a deed of trust, knowing same to be alive, who has examined the records to the date of the deed of trust, and knowing as a proposition of law no after conveyance can affect its lien, is required to examine indefinitely as to after conveyances, which, according to all principles of law, are postponed to such instrument?

Is Johnson a *bona fide* purchaser? Was he aiding, and abetting Oatis in his fraudulent design? Both of these questions, as a matter of fact, the court below determined favorably to defendants in this cause, and the findings are abundantly supported by the evidence.

Argued orally by *F. B. Pratt*, for appellant, and by *H. B. Greaves*, for appellees.

WOODS, J., delivered the opinion of the court.

If the evidence offered to support the view of Oatis, as to the understanding and agreement of Gross and himself, in the mak-

ing of the transfer to him by Gross of the note of Woodman & Bro., and the trust deed given to secure its payment, be correct, the bill of complaint exhibited herein by Gross is without any merit, and should have been dismissed outright. And if the theory of Oatis' answer is shown to be false, and the evidence offered to maintain it appears unworthy of credence, still the bill should have been dismissed, unless there was shown bad faith on the part of the Johnsons in the transaction, whereby they became holders of the paper above referred to.

The evidence discloses that on the same day in which Oatis executed his note and trust deed in favor of Gross, and on which Gross bases his claim in this suit, the latter transferred by indorsement, in writing, both the note and trust deed, theretofore made by Woodman & Bro. in his favor, to Oatis, and by such indorsement clothed Oatis with all the "rights and privileges, and such title as vested in " him (Gross), to the property described in the trust deed. Gross, by this act, held Oatis out to the world as the absolute owner of the note and trust deed, with the right to deal with the same according to his own pleasure, and thereby, even if we accept his theory of the character of the understanding and agreement between himself and Oatis and Woodman, which resulted in the transfer of the Woodman & Bro. note and trust deed to Oatis, put Oatis in a position, not open to challenge, to impose upon innocent third parties, in any sale he might make of the paper. Gross must pay the penalty of his own folly, and bear the loss of his security rather than the Johnsons, provided their conduct in the purchase of the paper was characterized by good faith. We have been unable to find, in the record before us, any satisfactory evidence of bad faith on the part of the Johnsons; they appear to have been purchasers from Oatis under the authority to sell and transfer the paper conferred by Gross, and appearing on the paper itself, and there were no circumstances attendant upon the purchase by them which may be held sufficient to rouse any suspicion that Oatis had no authority to do what he

proposed with the Johnsons to do, and which Gross' written indorsement on the paper empowered him distinctly to do.

The question in this case is, were the Johnsons *bona fide* holders of the paper indorsed by Gross to Oatis, and by Oatis indorsed to them? If they were not—if fraud tainted their purchase—they had no title to the paper. If they were, they should be made secure, not in the amount of money laid out by them in purchasing the paper, but in the fruits of the property to which they acquired title. The learned court below only erred in not denying the appellant any relief. It is true, Gross, under his subsequent or intervening trust deed from Oatis, had an equity in the cattle embraced in the trust deed, but, on the facts disclosed, that equity was utterly worthless, and any attempt to work it out by the court was idle, because the debt secured by the trust deed assigned by Oatis to the Johnsons was largely in excess of the value of the cattle, as appears conclusively from an inspection of the transcript. The Johnsons had also bought the equity of redemption of the Woodmans, and having a debt confessedly larger than the value of the property intended to secure it, Gross was left remediless, as to the cattle, under his deed of trust from Oatis.

*The decree on direct appeal is affirmed, and reversed on cross appeal, and appellant's bill is dismissed. Let the proper order be here entered.*