BANKS & CO. *v.* PULLEN ET UX.

[74 South. 424, Division B.]

MECHANIC'S LIENS. *Separate property of wife. Contracts. Constitution.*

Under Code 1906, section 2521, providing that a husband and wife shall not contract with each other so as to entitle the one to claim or receive any compensation from the other for work and labor, and that it shall not be lawful for the husband to rent the

wife's plantation, etc., or with any of her property to operate or carry on business, in his own name, but all business done with the means of the wife by the husband shall be deemed and held to be on her account and for her use, and by the husband as her agent and manager as to all persons dealing with him without notice, etc., where a wife entered into a contract with her husband for the erection of a building on her separate property paying him as a contractor and furnishing him the money to carry out his contract, she is liable to a materialman for material furnished the husband, and a lien for such material may be fastened on the wife's property.

APPEAL from the circuit court of De Soto county.

HON. E. D. DINKINS, Judge.

Suit by Banks & Company against G. H. Pullen and wife, Mrs. F. M. Pullen. From a judgment for the wife, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Holmes & Loggans,* for appellants.

The petition filed in this cause, states a good cause of action for the recovery of the judgment, against the defendant, G. H. Pullin, and that the same should be declared a lien upon the dwelling house erected, and that said house should be sold to satisfy the same.

The materialman's lien when sought to be enforced against a building upon the wife's land erected by the husband has given rise to much litigation. Our new law recognizes to the fullest extent the fact that houses are frequently built by people upon land not owned by them. The purpose of the law is to do justice to all parties, and therefore the lien will not cover the land upon which the building is erected, unless the same be done by the written consent of the owner. In the case at bar it will be observed that no judgment whatever is asked against Mrs. F. M. Pullin, nor is any relief sought as against her land. The case of *Fairbanks* v. *Briley,* 25 So. 354, does not apply, for in that case both Mr. and Mrs. Briley were made joint defendants to a suit to sub-

ject not only the plumbing fixtures placed in the house, but also the house (the property of Mrs. Briley) to the debt. This could not be done because Mrs. Briley, the owner of the house had not given her written consent for the plumbing fixtures to be placed in her house.

The facts in the case of *Schiaffino* v. *Christ*, 96 Miss. 801, are very similar to the facts in the case at bar. But relief was denied in that case, because the petition sought to recover a personal judgment upon the house and land of Madame Schiaffino and she had not given her written consent for the purchase of the material used in the erection of said house. Therefore the court could not pass upon the question as to the right of the materialman to have a lien on the house alone. *Max Priebatsh* v. *Baptist Church, et al.*, 66 Miss. 345, was a case where an individual purchased material in his own name which was used in erecting a church building, on land not owned by the church. It was held that the building was liable for the material debt.

The very language employed by the law-makers in declaring the materialman's lien shows the definite purpose to charge the house or building, with the debt contracted in the purchase of the material out of which the house is constructed.

It is essentially a proceeding *in rem* against the edifice, and is founded upon the same wholesome doctrine upon which the scriptual law, "the laborer is worth of his hire," is founded. Necessarily there are certain legal requirements that have to be complied with, before th lien can be enforced. There must be a contract, the building must be identified with reasonable certainty and no unfair advantage must be taken of the owner of the land upon which the building is erected. The statutes are liberally construed in favor of the lien. *Sharp, et al.* v. *Spengler, et al.*, 48 Miss. 360.

The alleged contract between G. H. Pullin and F. M. Pullin was, and is fraudulent, because by entering into this alleged contract under the terms mentioned therein,

which was a secret contract, it would be impossible for any laborer or materialman to avail himself of the "lien of mechanics and materialmen," under the laws of the state of Mississippi. In support of this we submit the following: *Bates Mach. Co.* v. *Trenton, etc., Co.*, 70 N. J. L. 684, 693, 58 Atl. 935, 132 Am. Rep. 811; 27 Cyc., page 299; 27 Cyc., page 301; 20 Cyc., page 23b; *Picard* v. *Shantz,* 70 Miss. 381.

The alleged contract between G. H. Pullin and F. M. Pullin, his wife, is void under section 2521, Code of 1906, because it is a contract for "work and labor" to do a specific thing for a specific sum of money, and said money is to be paid in advance. This is an entire contract and in support of this contention we submit the following: 4 Elliott on Contracts, section 3667; 2 S. & M. 585; *Wooten* v. *Read Bobbs,* 4 Merrill, Mississippi Digest, page 273, sec. 18; 14 L. R. A. 230; 3 Minnesota 109, 74 Am. Dec. 743; *Phipps* v. *McFarlane,* 19 Barb. 455; *Courtright* v. *Stewart,* 30 L. R. A. (N. S.) page 318; *Gies* v. *Bauscher Bros.* (Michigan Supreme Court), 43 L. R. A. (N. S.) page 97; *Bond* v. *Bourk* (Colorado Supreme Court); *Davis* v. *Blanchard,* — Misc. —, 138 N. Y. Supp. 202.

The very conflict of interest, and the prejudice and injury to third persons growing out of transactions like the above are but another argument in favor of the wisdom of the law restricting contracts between husband and wife.

*Mayes, Wells, May & Sanders,* for appellant.

If the court holds that the house built on the land of Mrs. Pullin is not subject to this lien, in order to reach this conclusion it will be necessary for the court to hold that the contract between Mr. and Mrs. Pullin was a valid contract. But, if the court should hold that this contract is valid, still, under the case of *Planters Lumber Co.* v. *Tompkins,* 71 S. R. 565, the case would

have to be reversed. Our contention is that the contract is void both under section 2521 of the Code and section 2522. Section 3060 of the Code of 1906, makes any building, constructed or repaired at the instance of a tenant, or other person not the owner of the land, liable to be subject to the materialman's lien. The liability of this building to be subjected to this lien does not depend upon whether or not a fraud was perpetrated upon the seller of the material; nor does it depend upon whether or not the seller knew, or had cause to know that the land on which the building is placed, was not the land of the tenant or other person. It is made liable on the mere fact that the tenant or other person purchases the material and constructs the building. So much for section 3060.

If this building is not to be made liable it can only be protected by reason of this alleged contract claimed to have been made by Mrs. Pullin with her husband. She admits in her answer that she did make a contract with her husband to erect for her a residence on the land described in the petition, and that in compliance with this contract her husband, who was a carpenter, erected a residence for her on the ground, and that she paid him in advance. And she asserts that under the contract with her husband he was to build the house and furnish the material. The contract, itself, shows that her husband was to furnish all the material and labor to build the house, and Mrs. Pullin was to pay him one thousand two hundred dollars in advance, so the contract states.

Section 2521 of the Code of 1906, prohibits the husband and wife from making any contract wth each other, so as to entitle the one to claim or receive any compensation from the other for work or labor, and declares that any such contract shall be void. In other words, under this clause of the statute, there is no way for a husband and wife to make a contract with each other by reason of which the one or the other is to receive

any compensation for work done for the other. Such contracts cannot be made, whether it be verbal or written—or whether it be acknowledged and recorded. By this section of the Code, this character of contract is forbidden. The second clause of the section allows the wife or husband to make a contract with the other to rent a plantation and carry on business, etc., if they make a written contract and sign, and acknowledge, and record same. But this second clause of the statute has no relation to the first clause, and the contract named in the first clause cannot be made under any circumstances.

Section 2522 of the Code prohibits the transfer or conveyance of goods and chattels, etc., between husband and wife, unless the transfer or conveyance be in writing, and acknowledged and filed for record. We thus see that under the answer of Mrs. Pullin, and the contract which she offers, the pleading makes out a case of clear liability in so far as this building is concerned to the lien of the materialman. Either of the statutes would avoid this contract. She declared in her answer that the contract was for labor and materials. Section 2521 prohibits the contract for labor, and section 2522 prohibits any conveyance of goods and chattels between the husband and wife, unless the contract is acknowledged and recorded, and the contract itself shows that it was not acknowledged and recorded—and she does not so allege in her answer. Under either of these statutes this contract is a nullity. 9 Cyc. 475; *Browdre* v. *Carter,* 64 Miss. 221; *F. M. Arnold* v. *S. E. Elkins,* 67 Miss. 675; *Black Todd & Co.* v. *Robinson,* 62 Miss. 68; *Cotton* v. *McKenzie,* 57 Miss. 419.

We further assert that counsel cannot produce an authority of this court which will hold that under facts like this, that this building cannot be subjected to the lien of the materialman. Cases may be found where the materialman sought to extend the lien not only to the building or fixtures, but to the land, and this court

held that this could not be done. In fact the statutes so provide, unless there is the written consent of the owner of the land to the placing of the building on it. *Planters Lumber Co.* v. *Tompkins,* 71 So. 565; *Fairbanks Co.* v. *Briley,* 25 So. 354; *Flake* v. *Central Hardware Co.,* 96 Miss. 838, 51 So. 461, and *Schiaffino* v. *Christ,* 96 Miss. 801, 51 So. 546; *Flake* v. *Central Hardware Co.,* 51 S. R. 461.

We earnestly insist that this case should be reversed.

*Mayes & Mayes,* for appellee.

The written contract of February 17, 1913, between Mr. and Mrs. Pullin must be considered. Even if, after hearing the oral testimony of these witnesses, this court could entertain any doubt on this question of agency, this written contract forever sets that doubt at rest, and shows conclusively that Mr. Pullen was not Mrs. Pullen's agent in this transaction, but that he was an independent contractor.

Our opponents say—Oh! but that contract was void under section 2521 of the Code of 1906. Our reply to that is: First, that that contract was not void; but was a legal and binding obligation; second, even, if on a direct attack that contract would have been declared void, still in this, a collateral attack by a third person, the legality of the contract cannot be questioned; third, even if that contract was illegal and void and held for naught, that would not relegate these parties to the relation of principal and agent; fourth, even if as a general rule the declaring of the contract to be illegal and void would leave the parties who had attempted to contract in the relation of principal and agent, still that general rule would not prevail here where Banks & Co., the third person, who is supposed to have been injured, admits through its manager, Davidson, that it sold Mr. Pullen the material on his own account, as a principal; and that he did not know Mrs. Pullen in the transaction.

Our opponents say that this contract is rendered void by section 2521 of the Code of 1906. Now we say that in the first place this section 2521, does not apply to this kind of a contract which was a contract for extra-ordinary services; but applies only to a contract which stipulates for payment for those services which the husband or wife, in the usual course of their living ought to render, one to the other, free of any charge. But if we are wrong as to this, and this court thinks that section 2521 forbids any sort of a contract for payment for services between husband and wife, then we say that this section is unconstitutional and void because of the provision of section 94 of the Mississippi Constitution of 1890.

This section of the Constitution says that the legislature shall not make any distinction between men and women in their right to contract with reference to property; that women are fully emancipated. Now it is quite plain that any man, if he wanted to, could have made with Mr. Pullen the contract which Mrs. Pullen attempted to make; and it is also quite plain that Mrs. Pullen has never been fully emancipated unless she be permitted to contract with Mr. Pullen just as any man could have done. So far so good. Now the framers of the Constitution recognized the trouble that might ensue from permitting a wife to contract with her own husband, so this section of the Constitution continued and said, however, that the legislature can regulate (but not entirely prohibit) contracts between husband and wife.

The right given the legislature to regulate contracts between husband and wife does not impower the legislature to absolutely prohibit the husband and wife from contracting one with the other; nor does it impower the legislature to absolutely prohibit the wife from making any particular kind of contract with her husband, if, under our laws, any man could have made that same kind of contract. Such is not the meaning of the word "regulate" as it is used in the Constitution. The word

"regulate" as here used implies that a wife can make any contract with her husband, which any man could have made, but that the legislature, if it saw fit, might require her to go through certain formalities when making it.

The word "regulate" is defined as follows: "The term regulate in a clause of the Constitution authorizing the legislature to regulate the wearing of arms; does not authorize the passage of a law prohibiting the wearing of arms. The power to regulate does not fairly mean the power to prohibit. On the contrary, to regulate necessarily envolves the existence of the things or act to be regulated." *Andrews* v. *State,* 50 Tenn. (Heisk.) 165, 180, 8 Am. Rep. 8.

"A power to regulate implies a continued existence of the matter to be regulated." *State* v. *Clark,* 54 Mo. 17, 33; *Ex Parte Patterson,* 58 S. W. 1011, 1013; 51 L. R. A. 654. 7 Words & Phrases, Judicially Defined, pp. 6044, 6045.

So it is seen that Mrs. Pullen has been fully emancipated by section 94 of the Constitution, and given the power to make any contract with Mr. Pullen which any man could have made. Any man could have contracted with Mr. Pullen for payment for services. Therefore to absolutely prohibit Mrs. Pullen from making such a contract with Mr. Pullen would be depriving her of her constitutional rights, and any statute which attempts to absolutely prohibit her from making such a contract is unconstitutional. That is exactly what this section, 2521, attempts to do.

Section 2521 absolutely forbids a wife to contract with her husband for payment for services. The thing is absolutely prohibited. There is no way to get around it. The statute does not by its terms permit the thing to be done, and then by way of regulation, say that it must be done with certain publicity, as for instance, by acknowledging and recording the contract; which is the form which section 94 of the Constitution intended

that such a statute should take.  This statute leaves no
road open by which the wife can contract for the pay-
ment for services, but says explicitly that such contract
shall be void.

It is true that at the close of this same statute 2521,
it is provided that certain contracts may be validated
by acknowledging and recording them in the chancery
clerk's office; but this language does not refer at all to
contracts for the payment of services between husband
and wife, but refers only to contracts of a very different
character, to wit, contracts where the husband rents the
wife's farm and uses her stock and means in conduct-
ing the farm.  That the provisions of this statute with
reference to acknowledging and recording contracts re-
lates only to farm contracts, is made plain by the his-
tory of this legislation and by the punctuation appearing
in the statute.  Notice the semicolon after the word
"void" in the fifth line of the statute.  Notice the
phrase "which changes this relation" in the third to
the last line of the statute, and especially the word
"this" contained in that phrase.

While it is true that this entire statute deals with the
general subject of husband and wife, still it provides
in its first part that contracts of a certain kind, to wit,
contracts for the payment of services, are absolutely
void and cannot be validated by recording or otherwise;
and it provides it its last part that certain contracts to
wit, contracts regarding rental of farms, etc., are void
as a general thing, but can be validated by acknowledg-
ing and recording.

So we say in conclusion of our discussion on this
point that section 2521 of the Code of 1906, does not
apply to contracts, the like of which Mrs. Pullen made
with her husband, but, if we are mistaken as to this,
then we say this section 2521, is unconstitutional be-
cause it is an absolute prohibition of her right to make
this contract and not merely a regulation of the right.
This contract was not *malum in se.*

Having disposed of section 2521 there is nothing which stands in the way of this contract of February 17. It was a perfectly valid and binding contract and fixed the relationship of Mr. and Mrs. Pullen at that of owner and contractor, and absolutely overthrows any argument based on any idea that Mr. Pullen was Mrs. Pullen's agent. Mr. Pullen was an independant contractor.

COOK, P. J., delivered the opinion of the court.

Upon motion of appellee, the stenographer's notes of the evidence taken at the trial of this suit were, by order of this court, stricken from the record. Afterwards appellee filed a motion asking an affirmance of the judgment of the trial court, which motion was overruled. The case is therefore presented to this court upon the pleadings alone.

The appellant furnished G. H. Pullen, the husband of Mrs. F. M. Pullen, certain building material for the purpose of building a dwelling house upon land belonging to Mrs. Pullen; the house was built by Mr. Pullen, and the material furnished by appellant was used in the construction of the house. The house was the dwelling house of Mrs. Pullen and her husband, and was used as such. Mrs. Pullen, the owner of the land, together with her husband, was made a party to this suit, and the petition asked that a judgment be rendered against G. H. Pullen for material furnished and used in said building, and that said judgment be declared a lien on the house, and that the house be sold to satisfy the judgment.

Mrs. Pullen, the owner of the premises, defended upon the theory that she did not make the contract for the material; that she made a contract with her husband to furnish the material and build the house at a stipulated price, which was paid in advance. In other words, Mrs. Pullen, by her answer to the petition, de-

nied liability, because she did not have any contract
with appellants; knew nothing about the dealings be-
tween her husband and appellants; that she made a
contract with her husband that he furnish the material
and build her a house; and that she had paid her hus-
band for the work and material.

We think a correct solution of this problem presented
by this record may be reached by the application of our
statutes relating to the business relation of the husband
to the wife, to the facts of the case. .

In the first place, section 2521, Code 1906, makes the
contract between Mrs. Pullen and her husband for com-
pensation for work and labor a nullity. It seems that
Mr. Pullen is a mechanic and the contract contemplated
that he would perform the labor necessary to the con-
struction of the building, and according to the pleadings,
he did do the work.

Going a step further, it appears that Mr. Pullen was
carrying on the business of a contractor, and as such
made a contract with his wife to do the work and to fur-
nish the material necessary to the completion of the job.
Was he using the "means" of his wife "to operate and
carry on business in his own name"? The wife furnish-
ed the money to enable him to perform the contract, so
she avers. It was her money, and may we not say with
equal certainty that money and means are one and the
same thing in the statutory sense? Besides, he had
charge of her land and erected the house thereon, os-
tensibly acting for her in the transaction of her busi-
ness. The statute was designed to protect the public.
Secret contracts between husband and wife are con-
demned for obvious reasons. We see in this case a
husband building a house on the land of his wife and
entering into a contract whereby he was to receive the
means of the wife for the purpose of securing the ma-
terial with which to erect the house. The husband did
not use the means to buy the material; he bought it
from appellant on credit. Who must suffer? The hus-

band is made the statutory agent of his wife whenever he uses any of her means to carry on a business in his own name ''as to all persons dealing with him without notice, unless the contract between husband and wife, which changes this relation, be evidenced by writing, subscribed by them, duly acknowledged,'' etc.

So we think when Mr. Pullen went into the business of contracting, financed by his wife, he was her agent, there being no pretense that the contract between him and his wife changing this relation, was ever made in accordance with the statute, or that appellant had any notice of the contract. He was not only her agent, but his contracts made in furtherance of his contract were, in law, the contracts of his wife, and the payment of the contract price to him does not, in any way, extinguish the obligations of his wife to pay the account made by him for materials.

This being our view of the law of this case, we will not discuss the very interesting brief of counsel for appellee referring to the lien of the materialman. Mr. Pullen was the agent of the owner authorized to buy the material and Mrs. Pullen is bound to pay the bill and her property may be sold to satisfy the claim.

*Reversed and remanded.*