Martin et al. v. First Nat. Bank of Hattiesburg.

(Division A. Jan. 6, 1936. Suggestion of Error Overruled Oct. 19, 1936.)

[164 So. 896. No. 31664.]

Watkins & Eager, of Jackson, and **D. M. Watkins** and **T. J. Wills,** both of Hattiesburg, for appellant.

**Stevens & Currie,** of Hattiesburg, for appellee.

Argued orally by **T. J. Wills**, for appellant and by **Geo. W. Currie**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

D. M. Watkins was an attorney at law, married to and living with Mrs. D. M. Watkins. She, John M. Martin, and her nephew, Rillard Martin, are appellants here from an adverse decree rendered by the chancery court of Forrest county in favor of the appellee, First National Bank of Hattiesburg.

Prior to February 27, 1932, Sam Martin, a relation of the appellants, died, having, during his lifetime, conveyed his estate consisting of lands, money, and per-

sonal property, to T. E. Martin. The appellants were heirs at law of Sam Martin and claimed considerable estate as such if the deed from Sam to T. E. Martin were set aside and held void.

Being desirous of contesting the validity of said deed and thereby acquiring their interest in the relative's estate, the appellants sought legal advice from D. M. Watkins and Gilbert & Cameron, attorneys at law, and on the date above-mentioned, consummated, executed, and delivered to said lawyers a written contract by which D. M. Watkins and the law firm of Gilbert & Cameron were employed as their counsel to prosecute to a conclusion their claim; and in this written contract they were assigned ''an undivided one-third interest in and to all property, real and personal, which might be recovered by said attorneys for them as heirs at law of Sam Martin, deceased, from and of his estate.'' The lawyers were not to compromise the claim of the appellants without their approval.

In the written assignment it was agreed that the contingent fee provided for therein was to be divided sixteen and two-thirds per cent. of the fee to D. M. Watkins, and sixteen and one-third per cent. to Gilbert & Cameron.

The attorneys brought suit to cancel the deed in the chancery court, where the decree was adverse to appellants. On appeal to the Supreme Court the cause was reversed and remanded, the deed was canceled, and the heirs at law of Sam Martin were adjudged to inherit and take their respective shares of his estate. Upon remand, the lower court entered its decree accordingly and appointed Gilbert & Cameron and Wilbourn, Wilbourn & Miller, to make certain collections and disbursements under that decree and on an agreement of the parties thereto.

In May, 1933, before the entry of the final decree, D. M. Watkins owed appellee, the First National Bank of Hattiesburg, one thousand three hundred ten dollars and

eighty-two cents. This amount had become past due and payment had been demanded of him and his indorser, and, in order to secure an extension of time and a renewal of his note, D. M. Watkins executed an assignment or pledge of his fee in the above case to the bank. In due time the bank notified Wilbourn, Wilbourn & Miller and Gilbert & Cameron of its assignment, and demanded that D. M. Watkins' interest in the fee be paid to it. The appellants notified these trustees not to pay any fees to D. M. Watkins or his assignee.

These facts were all set up in a bill filed by the bank against Mrs. D. M. Watkins, John Martin and Rillard Martin, and Wilbourn and others, alleging that money was in hand to pay the fee, and asking the court to decree that the fee be ordered paid over to it as assignee of Watkins by Wilbourn and others, as holders and distributors of the estate. D. M. Watkins was made a party to the bill, but did not answer; therefore a decree pro confesso and decree final were entered against him for the debt, and subjecting the fee due him to the payment of his debt to the bank. Mrs. Watkins and the Martins answered admitting the execution and delivery of the written assignment of sixteen and two-thirds per cent. of the estate to D. M. Watkins, but alleging that it was arranged before, and at the time of the execution of the contract between D. M. Watkins and themselves, that because of the relationship between them, he would not claim any compensation, and that the written contract was executed in order to obtain the services of Gilbert & Cameron for sixteen and two-thirds per cent.

Wilbourn, Wilbourn & Miller and Gilbert & Cameron answered, alleging that there was due on the assignment six hundred thirty-two dollars and forty-one cents, paid that sum into court, and were discharged therefrom.

The evidence in the case, besides the exhibit, was to the effect that thirty-three and one-third per cent. was the minimum contingent fee charged by the Meridian Bar in such cases. Cameron prepared the assignment in

favor of his firm and Watkins, but had to prepare it a second time to meet the wishes of appellants.

The appellants executed the written assignment with full knowledge as to its contents, but upon the agreement made before its execution and delivery to Watkins, that he would not claim any compensation thereunder and that this contract was drawn and executed in order to obtain the services of Gilbert & Cameron for sixteen and two-thirds per cent, which was to be the entire compensation to be paid by them for attorneys' services in their case.

The appellants said this agreement with Watkins was "before and after and all the time," referring to the fee assignment executed. Appellee interposed timely objections to all the evidence of the appellants on this line, contending such oral evidence varied the terms of the written contract, which were overruled. They had no notice of Watkins' assignment to the bank until it claimed the money after the final decree.

The court rendered a decree in favor of the bank, as the money had been paid into court, and a lien was created on Watkins' recovery to the extent of sixteen and two-thirds per cent. thereof on real and personal property, to pay his debt to the bank.

1. Under well-settled principles, the parol evidence to the effect that while the appellants executed a contract of assignment in writing in favor of Watkins, the terms of which were clear, binding, and unambiguous on its face, yet it was understood that they were not to be performed as therein stated, or indeed at all, was clearly incompetent. All parties fully understood the assignment before they executed it. This evidence, if competent, rendered the written contract a deliberate sham. Wren v. Hoffman, 41 Miss. 616; Baum v. Lynn, 72 Miss. 932, 18 So. 428, 30 L. R. A. 441; and English v. New Orleans & N. E. R. Co., 100 Miss. 575, 56 So. 665.

2. We reject the theory that after the written contract was executed, a new oral contract was made abro-

gating their conveyance of sixteen and two-thirds per cent. to Watkins. The answer of the appellants did not set up any such subsequent agreement in parol, and their evidence shows that the oral agreement prior to, and contemporaneous with, the written agreement was merged therein.

Watkins was armed with a written assignable contract, procured an extension of his note from the bank, and the doctrine of estoppel would most certainly apply to the Martins. The Martins, the appellants, clothed Watkins with all the indicia of ownership of an interest in their estate. See Gross v. Oatis, 74 Miss. 357, 20 So. 843; Wilkinson v. Love, 149 Miss. 523, 115 So. 707; Hall v. Box, 131 Miss. 218, 94 So. 221, and Gidden Motor Co. v. Johnston, 155 Miss. 328, 124 So. 367.

3. As to Mrs. Watkins, who executed a contract in favor of her husband for legal services to be rendered by him for her in the recovery of her separate property, appellant asserts, therefore, that the contract was void because in violation of section 1943, Code 1930. The applicable part of the section is as follows: "Husband and wife shall not contract with each other, so as to entitle the one to claim or receive any compensation from the other for work and labor, and any contract between them whereby one shall claim or shall receive compensation from the other for services rendered, shall be void," etc.

The prosecution and trial of a lawsuit by a lawyer professionally is work and labor as defined in Continental Life Ins. Co. v. Turnbough, 151 Miss. 43, 117 So. 334.

The appellee, to avoid the effect of the statute, presents three contentions: (1) That section 1943 is in direct conflict with section 1940, Code of 1930; (2) that said section should not be construed to apply to such contracts between husband and wife, relating to their separate property such as we have here; and (3) that if construed to apply to all contracts for work and labor,

the section is unconstitutional and void, violating section 94 of the Constitution of 1890.

As to the first contention, section 1940 emancipates women from disability on account of coverture, and declares that every woman now or hereafter to be married shall have the same capacity to own, control, and contract with reference to her property as if she were not married. Section 1943 read in connection therewith creates an exception to the broad grant of emancipation to women, and if so read produces no conflict, but is perfectly consistent therewith as an exception thereto.

As to the second contention, we can find nothing in the language of the statute, which is broad, plain, and unambiguous, authorizing us to limit by construction the obvious meaning thereof. This statute was first enacted as section 1177 of the Code of 1880, except these contracts are there denounced as "utterly void." The contract here under review, by the terms of this statute, is void.

As to the third contention, that section 1943 violates section 94 of the Constitution of 1890, in that it prohibits absolutely a certain class of contracts between husband and wife, the constitutional section reads: "The legislature shall never create by law any distinction between the rights of men and women to acquire, own, enjoy, and dispose of property of all kinds, or their power to contract in reference thereto. Married women are hereby fully emancipated from all disability on account of coverture. But this shall not prevent the legislature from regulating contracts between husband and wife; nor shall the legislature be prevented from regulating the sale of homesteads."

Section 1943 had been on our statute books ten years when the above section was adopted, and during that time the severity of the common law which forbade any kind of contracts between husband and wife had been relaxed and abolished for the most part. The thought then predominated that it was an evil to allow husband

and wife to contract with each other for work and labor for compensation. The paramount, predominant idea of the framers of the Constitution was to place husband and wife on equality as to their separate property. The prohibition was against creating a distinction between the rights of men and women as to acquisition, enjoyment, and disposition of property, or making contracts in reference thereto. Referring now to section 1943, we inquire what distinction is made between the husband and the wife—the one a man and the other a woman? The husband and wife are upon exactly the same plane. The same law applied to the class, married men and married women. When the Constitution was adopted, its framers knew, as did the Legislature before and since, that men and women living together as husband and wife could so easily, on account of their relation to each other, concoct contracts for work and labor inter sese to the hurt of the public who chanced to deal with, or be interested financially in them. An example may be found in the facts of Banks & Co. v. Pullen et ux., 113 Miss. 632, 74 So. 424, 4 A. L. R. 1013, where, however, it was not there necessary for the court to pass upon the constitutionality of this statute.

But appellee says the power to regulate contracts between husband and wife is not the power to prohibit them, and cites Crittenden v. Town of Booneville, 92 Miss. 277, 45 So. 723, 131 Am. St. Rep. 518, Johnson v. Town of Philadelphia, 94 Miss. 34, 47 So. 526, 19 L. R. A. (N. S.) 637, 19 Ann. Cas. 103, and Dart v. City of Gulfport, 147 Miss. 534, 113 So. 441. These cases involved ordinances of municipalities wherein the Legislature granted them the right by statute to regulate by ordinance, and these ordinances were found to prohibit and not to regulate. In City of Hazlehurst v. Mayes, 96 Miss. 656, 51 So. 890, this court held that municipalities have no powers except those delegated to them by the state, and their powers are to be construed most

strongly against a right claimed and not clearly given by the statute.

The Legislature here made no distinction between married women and married men. This statute does not involve the disability of coverture, except incidentally, and prohibits a class of contracts between a class of people without regard to sex, and to attain a general end for the public good. See Buttfield v. Stranahan, 192 U. S. 470, 24 S. Ct. 349, 48 L. Ed. 525, and U. S. v. Lariviere, 93 U. S. 188, 23 L. Ed. 846.

The United States Supreme Court has consistently held that the power to regulate interstate commerce may include the power to prohibit, in certain cases, the transportation of persons or things in interstate commerce, as, for instance of diseased livestock (Missouri, K. & T. R. Co. v. Haber, 169 U. S. 613, 18 S. Ct. 488, 42 L. Ed. 878); of lottery tickets (Champion v. Ames, 188 U. S. 321, 23 S. Ct. 321, 47 L. Ed. 492); of adulterated or improperly branded foods (Hipolite Egg Co. v. U. S., 220 U. S. 45, 31 S. Ct. 364, 55 L. Ed. 364; Weeks v. U. S., 245 U. S. 618, 38 S. Ct. 219, 62 L. Ed. 513); of white slave traffic (Hoke v. U. S., 227 U. S. 308, 33 S. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.), 906, Ann. Cas. 1913E, 905); of prize fight films (Weber v. Freed, 239 U. S. 325, 36 S. Ct. 131, 60 L. Ed. 308, Ann. Cas. 1916C, 317); of intoxicating liquors unlawful in the state of destination (Clark Distilling Co. v. Western Maryland Ry. Co., 242 U. S. 311, 37 S. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845); and of stolen automobiles (Brooks v. U. S., 267 U. S. 432, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407).

The powers of Congress are enumerated in the Federal Constitution, and, so restricted, the power to prohibit for certain purposes was permitted by the court under the granted power to regulate, so that it is clear that restriction or prohibition is within the power to regulate. A state Legislature's power to make laws is absolute unless restricted by constitutional limitations.

We adhere to the doctrine that the power to regulate generally does not embrace the power to prohibit, as in a grant from the people to the Legislature; and it is a most delicate matter that thereunder, as here, a class may be prohibited from entering into one class of contracts. But we think the public good is involved. There was, and is here, an effort to prevent fraud and unfair dealing. The reason for the statute is not founded in coverture, per se, but to maintain a public policy of honest dealing. The power to regulate was precautionary rather than entirely exclusive and to make certain the precedent broad language.

The statute does not, in view of its high moral aim, offend section 94 of the Constitution beyond a reasonable doubt, and by its terms the contract between D. M. Watkins and his wife was void and not enforceable by him or his assignee, the bank, against her. Nor is there room for estoppel as to her; the bank took its pledge with knowledge that it was void and unenforceable as to her.

The contract for legal services between D. M. Watkins and John and Rillard Martin is not, however, void. Each of them assigned to D. M. Watkins sixteen and two-thirds per cent. of his property recovered by his services as a lawyer. Their contract, therefore, is separable as to each of them, and is so enforceable, and their interest so assigned to Watkins is liable to be subjected to the claim of the bank herein. See 13 C. J. 513 and 514, section 471 and section 2028, Code 1930; also American Law Institute, Rest. Contracts, section 128.

In order that the exact amount of the decrees which should be rendered may be determined, we therefore remand the case to the lower court that it may, under the rule here announced, ascertain the amount due to Watkins as a fee by the Martins separately, and decree accordingly.

Reversed, and decree here for appellant Mrs. Watkins; affirmed and remanded as to the Martins.