## HANSSEN v. PUSEY & JONES CO.

(District Court, D. Delaware.　July 21, 1921.)

No. 429.

1. **Receivers ☞40—Decision on merits not necessary to appointment pendente lite.**

To sustain a motion for the appointment of a receiver pendente lite, it is not necessary to decide in favor of complainant on the merits, nor is it necessary that such a case be presented as will, beyond doubt, entitle him to a decree on the final hearing, although the court will not disturb defendant's possession of property without a probability that plaintiff will prevail on final hearing.

2. **Bills and notes ☞155—Extension agreement made with third person immaterial to negotiability of notes.**

An extension agreement made by the payee of notes with a third person, recited in memorandum on back of each of the notes, did not affect their negotiability.

3. **Bills and notes ☞351—Overdue paper negotiable.**

Overdue paper is negotiable, and an indorsee takes the paper subject only to such equities as attach to the notes themselves, and in his hands the paper is not subject to claims against the payee, or an intermediate indorser, arising out of collateral matters or independent transactions.

4. **Bills and notes ☞443 (3)—Indorsement of note to agent transfers title.**

As respects an agent's right to sue on a negotiable note, the indorsement of the note to the agent transfers to him title thereto as against all parties except his principal.

5. **Corporations ☞556—Suit to have receivers appointed maintainable by general creditor.**

Suit to procure appointment of receivers for a Delaware corporation under Rev. Code Del. 1915, par. 3883, is maintainable by one not a judgment creditor, but merely a general creditor.

6. **Corporations ☞557 (5)—Showing of insolvency held sufficient.**

In suit to procure appointment of receivers for a Delaware corporation under Rev. Code Del. 1915, par. 3883, showing of the corporation's insolvency *held* sufficient.

7. **Corporations ☞553 (6)—Necessity for receivership shown by transfer of control of corporation.**

In suit to procure appointment of receivers for a Delaware corporation under Rev. Code Del. 1915, par. 3883, the fact that all its shares of capital stock, both common and preferred, stood pledged for large sums of money, and that, by agreement between the corporation and the United States Shipping Board Emergency Fleet Corporation, a nominee of the Fleet Corporation was elected treasurer of the company, and that, through him, the Fleet Corporation had complete control of the corporation's funds and their disbursement, and that by another agreement the affairs of the corporation were to be managed and controlled for the preservation of its assets, for the benefit, not of all creditors and stockholders, but for the benefit of the parties to that agreement, *held* to warrant appointment of receivers pendente lite; the two agreements amounting to nullifying Rev.

Code Del. 1915, par. 1923, requiring a corporation to be managed by its board of directors.

**8. Corporations ☜665(3)—Courts have no jurisdiction over internal affairs of foreign corporation.**

A court is without control of the internal affairs of a corporation not chartered in the state where the court sits.

In Equity. Suit by Hans Karluf Hanssen against the Pusey & Jones Company, for appointment of a receiver for defendant. Receivers were appointed ex parte. On rule to show cause why the receivership should not be continued during pendency of the cause. Rule made absolute.

William G. Mahaffy and John P. Nields, both of Wilmington, Del., for complainant.

George N. Davis and Robert Penington, both of Wilmington, Del., Chester N. Farr, Jr., of Philadelphia, Pa., and Selden Bacon, Henry A. Wise, and Hartwell Cabell, all of New York City, for defendant.

MORRIS, District Judge. The bill of complaint was filed by Hans Karluf Hanssen against the Pusey & Jones Company, a Delaware corporation, praying the appointment of a receiver for that corporation. The bill alleges, among other things, that the complainant is a subject of the king of Norway and a resident of Norway; that the jurisdictional amount is involved; that a statute of the state of Delaware authorizes the appointment of a receiver of a Delaware corporation on the application of any creditor or stockholder thereof, whenever the corporation is not one for public improvement and shall be insolvent. The bill further alleges that the complainant is a stockholder and a creditor of the respondent corporation, that the respondent is not a corporation for public improvement, and that it is insolvent, in that it is unable to pay its obligations as they fall due in the usual course of business.

Upon filing the bill the complainant moved for the appointment ex parte of one or more receivers. This motion was based upon the further allegation of the bill that a judgment entered in this court on the 22d day of March, 1921, at the suit of Baltimore Dry Docks & Shipbuilding Company against the Pusey & Jones Company for $800,125, was illegally, unlawfully, and in effect collusively obtained. As the judgment would pass beyond the control of the court at the end of the term at which it was entered, unless an application to vacate and set aside the judgment should be made before the rising of the court on the last day of the term, and as the bill of complaint was filed on the 9th day of June, and as the term of this court at which the judgment was entered would end on the 13th day of June, receivers were appointed ex parte and without delay, in order that they might have an opportunity before the end of the term to qualify, examine the matter, and take such action with respect to the judgment as they might deem proper or be advised.

The matters now before the court arise upon a rule, issued at the time of the filing of the bill, directed to the respondent, and made re-

turnable on June 18th, to show cause why the receivers appointed ex parte, to continue until the further order of the court, should not be continued during the pendency of the cause. The rule was heard upon bill, answer, affidavits, and exhibits filed by the respective parties. Paragraph 3883 of the Revised Code of Delaware of 1915, upon which complainant relies, provides that—

"Whenever a corporation shall be insolvent, the Chancellor, on the application and for the benefit of any creditor or stockholder thereof, may, at any time, in his discretion, appoint one or more persons to be receivers of and for such corporation, to take charge of the estate, effects, business and affairs thereof, and to collect the outstanding debts, claims, and property due and belonging to the company, with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, to appoint an agent or agents under them, and to do all other acts which might be done by such corporation and may be necessary and proper; the powers of such receivers to be such and continued so long as the Chancellor shall think necessary; Provided, however, that the provisions of this section shall not apply to corporations for public improvement."

While the defendant admitted in open court that the allegations of the bill were sufficient to warrant the appointment ex parte of receivers, it contends that, in view of the facts disclosed by the affidavits filed in support of and in opposition to the rule, the plaintiff has failed to establish that he is either a stockholder or a creditor of the defendant corporation, or that the defendant is insolvent in the sense that it has not available funds to meet current liabilities as they mature, and further that, even if it appears that the complainant is a stockholder or a creditor, and that the defendant company is insolvent as alleged, that the facts shown do not warrant the exercise of judicial discretion in favor of the appointment of receivers.

[1] It is to be constantly borne in mind that, in order to sustain a motion for the appointment of a receiver pendente lite, it is not necessary to decide in favor of complainant upon the merits, nor is it necessary that such a case be presented as will, beyond all doubt, entitle him to a decree upon the final hearing. In granting temporary relief by the appointment of such receiver, courts of equity in no manner anticipate the ultimate determination of the questions of right involved. They merely recognize that a sufficient case has been made out to warrant the judicial preservation of the rights or property in controversy, for the benefit of all parties in interest, until a hearing upon the merits shall have been had, without expressing, and, indeed, without having the means of forming, a final opinion as to such rights. The court will not, however, upon an application for temporary relief, ignore the probability of plaintiff's finally establishing his alleged right, nor will it, by the appointment of receivers pendente lite, disturb defendant in the possession of its property without a probability that plaintiff will prevail upon the final hearing.

The affidavits and exhibits filed herein disclose the facts hereinafter stated. In December, 1919, one Christoffer Hannevig, then the president of the respondent corporation, was indebted to nine Norwegian individuals and corporations in an amount exceeding $1,250,000. To secure the payment of that indebtedness the complainant came to

America as the authorized representative of the Norwegian creditors. After negotiations between Hannevig and the complainant, the former delivered to the latter on February 13, 1920, certain shares of stock and nine promissory notes, aggregating $650,000, made by the Pusey & Jones Company, of which eight were payable to the order of Christoffer Hannevig, Inc., and the remaining one to the order of Hannevig. One note was dated July 27, 1917, another October 1, 1917, and the remaining notes bore intervening dates. Some were payable in four months, others in three months, after their dates. All the notes were indorsed in blank by the respective payees. They have at all times since their delivery to the complainant remained in his possession. The delivery of the notes was accompanied by a memorandum, written in Norwegian, signed by Hannevig and the complainant, a translation of the pertinent portions of which is as follows:

"The undersigned, Christoffer Hannevig, hereby acknowledges this date that he has delivered to Mr. H. Karluf Hanssen, as representative of the nine contract holders at the Pusey & Jones Co. which have a certain amount owing to them for overpayments and differences on the installments. The shares, etc., given below as security correct payments for the obligations with interest which are now due. * * * I reserved the deposited values shall be delivered to me, and can be disposed of by me free of any incumbrances on condition, that I pay my obligations in Norwegian currency at an exchange taken at the respective installment dates with an interest of 6 per cent., and this shall not acknowledge that I am bound to pay anything else except $565,875, which I have already paid out in taking over the S. S. Fire Island in American dollars."

At the time of the delivery of the notes to the complainant, Hannevig was or thereafter became indebted to the defendant, by reason of matters wholly unconnected with the notes, in a sum exceeding the aggregate amount thereof. On September 18, 1917, Hannevig entered into an agreement with the United States Shipping Board Emergency Fleet Corporation that he would extend the terms of payment of the notes until the completion of the last of eight ships requisitioned by an order of the Shipping Board of August 3, 1917. Pursuant to that agreement with the Shipping Board, a memorandum was made on the back of each of the notes as follows:

"Extended according to letter dated September 18, 1917, to U. S. Shipping Board Emergency Fleet Corporation."

The ships referred to in the letter or agreement were all completed before the 1st day of August, 1919. The claim against the defendant, evidenced by the notes, has not been reduced to judgment.

Under this state of facts the defendant makes four contentions: First, that by the agreement of September 18, 1917, the negotiability of the notes was destroyed; second, the notes having been delivered to the complainant after their maturity, they were received by him subject to all equities against Hannevig, and Hannevig being indebted to the defendant in a sum in excess of the amount of the notes, nothing is due thereon; third, that the notes having been delivered to the complainant as the representative of the Norwegian creditors of Hannevig, the complainant has not title to the notes and is not a creditor of the defendant corporation; and, lastly, that even if complainant

is a creditor he is only a general creditor, and a suit of this character may be maintained in this court only by a judgment creditor.

[2-5] As to the first contention, it is unnecessary to decide whether an agreement for an indefinite extension of time for payment embodied in a note or entered into between the parties thereto destroys its negotiability, for the agreement here under consideration touching that matter was one made, not with the maker of the notes, but with a third person. Such an agreement did not and could not affect the notes, their tenor, or any quality thereof. The second contention overlooks the doctrine that overdue paper is negotiable, and that an indorsee takes the paper subject only to such equities as attach to the notes themselves, and that in his hands it is not subject to claims against the payee, or an intermediate indorser, arising out of collateral matters or independent transactions. 3 R. C. L. 1046; Daniel on Negotiable Instruments, § 725. The third contention ignores the negotiable character of the notes, and that an indorsement of a note to an agent transfers to him title thereto as against all parties except his principal. 3 R. C. L., Bills and Notes, §§ 190, 198–201. The notes are unpaid, and no equities have been set up by the defendant that would serve to defeat in whole or in part the claim of the complainant based thereon. That a suit of this nature may be maintained by a general creditor has long been settled, so far as this court is concerned, by Jones v. Mutual Fidelity Co. (C. C.) 123 Fed. 506. The cases cited by the defendant herein in support of its contention that a suit of this character may be maintained only by a judgment creditor were all reviewed in that case. It appearing that the complainant is a creditor who may maintain this suit in this court, it is unnecessary now to determine whether he is also a stockholder as alleged.

[6] Little need be said with respect to the insolvency of the defendant, in that it is unable to meet its obligations as they fall due in the usual course of business. It has not for years been able so to meet its maturing obligations. For a long time the defendant has been financially dependent upon the Fleet Corporation. The accounts between the defendant and that corporation have not been adjusted and are in litigation. There is apparently no substantial reason to expect that further moneys will be immediately forthcoming from that source. In August, 1920, defendant's financial condition, as stated by it in its bill of complaint filed in the Supreme Court of the District of Columbia against the United States Shipping Board Emergency Fleet Corporation, had resulted in an inability "to obtain and give acceptable security for the completion and delivery of vessels which otherwise it would be able to contract to construct in one or other of its shipyards"; inability "to obtain contracts for present or future ship construction work"; an "ever-increasing impairment of credit, from which plaintiff has suffered for more than six months last past, and will continue to suffer until same is completely ruined or irretrievably lost"; and in a rapidly diminishing executive staff and labor force, which "soon, unless remedied, will be nonexistent." I find nothing in the record to overbalance those statements of the defendant. Apparently, as then foretold, its condition has gradually become worse. A

judgment for $800,125 was obtained against it on March 22d last by the Baltimore Dry Docks & Shipbuilding Company. The validity of that judgment is not questioned by the defendant, yet it remains unpaid. It appears that the plaintiff therein entered into an agreement that it would not require payment thereof until November, 1921; but the terms and conditions of that agreement were extraordinary, and were not those which obtain in the ordinary and usual course of trade and business.

[7] It appearing that the complainant will probably be able to establish at final hearing that he is a creditor of the respondent company, and that that company is insolvent, in that it is unable to pay its obligations as they mature in the ordinary and usual course of trade and business, should an order be now made continuing the receivers during the pendency of this cause? In Ellis v. Penn Beef Co. et al., 9 Del Ch. 213, 217, 80 Atl. 666, 667, the Chancellor said:

"The appointment of a receiver pendente lite is a well-recognized branch of the general preventive jurisdiction to protect from injury the thing in controversy, and preserve it for all parties in interest until disposed of as the court may direct. This is an exceedingly delicate and responsible duty, to be discharged with the utmost caution and only under such special and peculiar circumstances as demand summary relief. It is, therefore, not to be exercised doubtingly, but the court must be convinced that the relief is needed, and that it is the appropriate means of securing a proper end. Serious injury to the complainant is an important element in deciding whether the relief should be granted. * * * The remedy is, of course, provisional, and not decisive of the ultimate rights, nor conclusive of the merits. With a prima facie case made by the complainant, and probable cause for sustaining the bill, the preliminary relief should be granted, without going into the merits."

Are receivers necessary to protect the assets of the defendant and to preserve the same for all parties in interest until the final determination of this cause? All the shares of the capital stock, both preferred and common, stand pledged for large sums of money. The equities therein, if any, have likewise been assigned to secure the payment of other large sums of money. The Revised Code of Delaware of 1915, par. 1923, provides:

"The business of every corporation organized under the provisions of this chapter shall be managed by a board of not less than three directors. * * * *"

An agreement entered into by and between the defendant corporation and the United States Shipping Board Emergency Fleet Corporation on the 14th of May, 1918, contains the following provision:

"The company [the defendant herein] further agrees to amend its by-laws so that the directors may take all necessary steps to elect Henry G. Barstar as treasurer of the company, and to make provision that the said office of treasurer may be filled from time to time by a nominee of the Fleet Corporation and to provide by said changes in the by-laws that the treasurer so named by the Fleet Corporation shall have complete control of the disbursements of the corporate funds at all three yards of the company."

It further appears that the agreement so entered into by the company has been carried out, and that at the time of the appointment of receivers the Fleet Corporation, through its representative, acting as treasurer, had complete control of all the corporate funds of the de-

fendant and of their disbursement. It further appears that on March 18, 1921, an agreement was entered into (a copy of which is printed in the margin) [1] by which the affairs of the defendant corporation were to be managed and controlled, the purpose of that agreement being, as I understand it, not for the preservation of the assets of the defendant

[1] The several represented interests subscribing to this memorandum or plan of action with respect to the Pusey & Jones Corporation agree:

First. They will promote and approve the immediate election of a board of five directors of the Pusey & Jones Corporation to be constituted as follows: Henry A. Wise, receiver in bankruptcy of Hannevig, his nominee or successor in office; Hartwell Cabell, representing the insurance departments, or his successor appointed by them; Laurence Leonard or other representative of the United States shipping interests; George Weems Williams, or other nominee of the Baltimore Dry Docks & Shipbuilding Company, or a successor to be chosen as hereinafter provided; William G. Cox, of Delaware.

Second. The Baltimore Dry Docks & Shipbuilding Company, hereinafter called the Dry Docks Company, will proceed with the trial of the case in which it asserts a claim against the Pusey & Jones Corporation for $750,000 and accrued interest, which case is set for trial in the United States District Court for the District of Delaware, on March 22, 1921, and to the trial of said case on said date no request for postponement will be made; and the said Dry Docks Company does stipulate that no execution will be issued or levied on said judgment for the period of six months from the date of entry thereof. The Dry Docks Company does also agree that if, at any time prior to the 1st of November, 1921, the full amount of its judgment, including accrued interest and court costs, is received by it, it will enter said judgment released (or assign same without recourse), and will also waive any and all rights accruing out of and in respect to the deposit of preferred and common stock of the Pusey & Jones Corporation by Christoffer Hannevig, certificates of which are now in their possession or under their control. Upon receiving payment of said judgment, interest, and costs on or before the 1st day of November, 1921, the alleged purchase of the stock by the Dry Docks Company shall be considered as canceled, and the Dry Docks Company shall be released from any further liability to any one on account of said transaction, and said stock shall be delivered by the Dry Docks Company to the said Hartwell Cabell and Henry A. Wise (and/or their respective successors), to hold the same for account of whom it may concern, and the Dry Docks Company will thereupon cause its nominee to resign from the board of directors of the said Pusey & Jones Corporation, and the vacancy in said board and on the litigation and settlement committee hereinafter mentioned shall be filled by the selection by Henry A. Wise and Hartwell Cabell (or their respective successors) of a neutral and disinterested person acceptable to them both. If there is not paid to the Dry Docks Company on or before November 1, 1921, the full amount of the judgment, interest, and costs, then the rights of the Dry Docks Company to the stock of the Pusey & Jones Corporation now in its possession shall be the same as if this agreement had not been executed, but Henry A. Wise, one of the receivers in bankruptcy of Christoffer Hannevig, or his successor, and the superintendent of insurance of the state of New York and the superintendent of insurance of Pennsylvania shall be permitted to intervene in the suit now pending in the United States District Court for the District of Delaware, or in any other litigation now or then hereafter pending, involving the title to or ownership of said stock, for the purpose of protecting their respective rights in regard to said stock and contesting the title to the same now insisted upon by the Dry Docks Company, it being understood that the said suit now pending in the said District Court of the United States for the District of Delaware shall be adjourned until November 15, 1921. The making of this agreement is without prejudice to the rights of the Dry Docks Company, or the receivers or trustees of Hannevig, or the superintendents of insurance of New York and Pennsylvania, in regard to stock transfers made by Hannevig, or title or ownership of such stock, and is simply and solely an arrangement to

company for the benefit of all its creditors and stockholders, but primarily for the benefit of the parties to that agreement.

[8] True, that agreement was approved by a judge of the District Court of the United States for the Southern District of New York; but that approval merely authorized its receiver in bankruptcy of a

postpone any questions and the litigation of any questions in that regard until November 15, 1921: Provided, however, that if, before November 1, 1921, the Dry Docks Company shall have been fully paid as aforesaid, this litigation shall be disposed of in the spirit of this agreement.

Third. Messrs. Rounds, Schurman, and Dwight are now chief counsel for the Pusey & Jones Corporation in the litigations in connection with the prosecution of its claim against the United States Shipping Board and the United States. They shall be continued as such chief counsel, with the right to continue the employment of Messrs. McKinney & Flannery as local counsel in Washington, subject, however, to the joint advice, approval, and control of a litigation and settlement committee composed of Henry A. Wise, or his successor, and George Weems Williams, or his successor, to be selected as hereinbefore provided. No proposition or compromise, adjustment, or settlement shall be made or accepted on behalf of the Pusey & Jones Corporation, excepting with the consent and approval and under the general direction of Henry A. Wise (or his successor) and George Weems Williams (or his successor), Wise and Williams and their successors being hereby constituted a committee of two in full charge of all negotiations and settlements and all steps to be taken looking toward the settlement of the claims of the company against the government, or the United States Shipping Board, or the Emergency Fleet Corporation. Williams shall not withhold approval of any settlement which pays Dry Docks Company in full on or before November 1, 1921. Hartwell Cabell, or his successor, however, shall be kept fully informed of developments in connection with any such negotiations or settlements, it being intended that a full spirit of co operation shall be preserved. It is further expressly understood and agreed that the board of directors and the stockholders of the Pusey & Jones Corporation shall take appropriate action to carry out the spirit and intent of this agreement, to which end the present board of directors shall elect the board hereinbefore set forth, and appropriate action shall also be taken for the purpose of holding a stockholders' meeting for the ratification of such action, and the board of directors shall spread this agreement in full upon the corporate minutes, approve the same, and by due resolution vote to carry out its intent and purpose in good faith, and to carry out this agreement in every possible way, and the United States government and its agencies and representatives, the United States Shipping Board and the Emergency Fleet Corporation, shall be duly advised of the action taken by the several interests, and be requested to co operate in the carrying out of this agreement, and particularly in reaching a prompt and just settlement of all matters in controversy between the United States government and its agencies aforesaid and the Pusey & Jones Corporation.

The board of directors shall from time to time authorize the expenditure of such money as may in the judgment of the board be necessary and proper for the carrying out of the intent of this agreement, but no counsel shall be employed or retained by the company, or compensated, without the written consent and approval of said committee, composed of Henry A. Wise and George Weems Williams, or their respective successors.

This agreement has been entered into after conference participated in by the following: Jesse S. Phillips, superintendent of insurance of the state of New York; Hartwell Cabell, as counsel for said Jesse S. Phillips, as liquidator of certain insurance companies; Thomas B. Donaldson, superintendent of insurance of the state of Pennsylvania; James E. Finegan, counsel for Thomas B. Donaldson, as liquidator of certain insurance companies; William H. Hotchkiss, counsel for the Jefferson Insurance Company, North Atlantic Insurance Company, and Liberty Marine Insurance Company; Henry A. Wise and Thomas P. Hanagan, receivers of Christoffer Hannevig, by Saul S. Myers

stockholder of the Pusey & Jones Company to become a party thereto. Such approval had no other effect or purpose. That approval had no relevancy to the questions here involved. It is well settled that a court sitting in the state of New York is without control over the internal affairs of a corporation not chartered in that state. Fletcher on Corporations, 5786. These two agreements amount to a practical nullification of the Delaware statute requiring that a Delaware corporation shall be managed by a board of directors; the purpose of that statute being that the corporation shall be so managed for the benefit of all parties in interest and not merely for some of such parties.

In view of the financial condition of the company and the foregoing facts, I deem the continuance of the receivers during the pendency of this cause essential for the protection of the interests of the complainant and others in like position.

and James N. Rossenberg; Laurence Leonard; Charles Kimmich; Chester Farr; T. Langland Thompson; George Gordon Battle; Elon S. Hobbs; George Weems Williams; Sidney M. Henry, vice president Dry Docks Company.

These participants in the conference leading to this agreement all have an interest in securing a prompt and equitable determination of the claims of the Pusey & Jones Corporation against the government or its agencies. All recognize the importance and desirability of having the committee composed of Messrs. Wise and Williams have exclusive and complete supervision of the litigation and charge of the settlements and all negotiations in respect thereto, and all parties to this agreement therefore agree that they will not interfere with any such negotiations or take any independent action whatsoever without first getting written approval of Messrs. Wise and Williams or their successor.

It is agreed that none of the parties hereto will institute, or assist or acquiesce in the institution, of any proceedings looking to a receivership in bankruptcy of the Pusey & Jones Corporation, or other interference with the intentions of this instrument, for the period to be terminated on November 1, 1921, or for such other and additional period as may be agreed upon unanimously by George Weems Williams, Hartwell Cabell, and Henry A. Wise (or their respective successors). There being certain matters in issue between the receivers of Christoffer Hannevig and the insurance departments and the companies now being liquidated under their supervision, it is agreed that the insurance departments will furnish, upon the request of the receivers or trustees of Hannevig, such information, data, and testimony as may be relevant and competent and as might be required by court order.

The making of this agreement is no recognition by the said receivers or trustees of prior rights on the part of the insurance departments in certain shares of the stock of the Pusey & Jones Corporation. The United States District Court for the Southern District of New York is to be asked to postpone the election of a trustee in bankruptcy of Christoffer Hannevig pending the determination of the matter in controversy between the Pusey & Jones Corporation and the United States government and its respective agencies. New York City, March 18, 1921. Jesse S. Phillips, Supt. of Ins. of New York. Hartwell Cabell, Counsel for Above. Chas. Kimmich. Thomas B. Donaldson, Comm. of Insurance, State of Penn. James E. Finegan, Counsel for Above, Atty. Com. Donaldson. Elon S. Hobbs, Counsel for Jefferson Co. Ins. Companies, J. N. Rosenberg, for Receiver of Christoffer Hannevig, as Counsel for Wise & Hanagan. Chester V. Farr, Jr. Henry A. Wise, Thomas P. Hanagan, Receivers Christoffer Hannevig, Bankrupt, per Thomas Hanagan. Geo. Gordon Battle, Counsel for Pusey & Jones. T. Langland Thompson, Counsel for Ch. Hannevig. Baltimore Dry Docks & Shipbuilding Co., by Sidney Henry, Vice President. George Weems Williams, Its Attorney.