Mr. Justice MILLER
delivered the opinion of the court.
Waiving for the present the question whether the bonds were overdue in the sense which puts a purchaser of dishonored negotiable paper on the inquiry as to defences which may be set up against it, it is quite clear that they were transferable by delivery after due the same as before. To invalidate the title so acquired by a purchaser, it is necessary to make out some defect in that title.
The main allegation of the bill is that these are part of the bonds'issued to White aud Chiles, in aid of the rebellion. All knowledge of this, fact is denied by defendants, and the. fact itself is denied. Conceding that their denial of the fact, about which perhaps they know nothing^ had no. other effect than to put in issue the allegation of plaintiff’s bill on that subject, it remained for plaintiff to establish its truth by evidence.
This it attempted to do. Two witnesses alone are relied on for this purpose, namely, Taylor, the Comptroller of the-Treasury of the United States, and Paschal, one of the attorneys for complainauts. The former was examined at much length, and gave it as his opinion, from certain calculations made by him, based upon papers in his office and *82 information received by him from officers of the State.of Texas, and other sources, that these bonds were of the White and Chiles issue. He says that it is only an opinion, and it is evident from his deposition that the data.on which he bases that opinion are far from conclusive. It is not 'Worth while to waste words in proving that such testimony is wholly incompetent to establish any fact, Or rather to show that it is not evidence at all.
The deposition of Paschal is to the effect that by reason of his connection with the suit of Texas v. White and Chiles, he had become familiar with a number of facts from which he had satisfied himself that these bonds were of the White and Chiles lot. As the matters on which this conclusion was founded-were all of them statenients of others, some verbal, some written, and all. of them capable of being proved, no reason is.perceived why the witness should be substituted for the court in weighing these facts, and making the proper inferences. The same observation applies with--equal force to Taylor’s testimony.
Not only is there no evidence that these bonds were irregularly or improperly issued, or were issued for' any treasonable or other unlawful purpose, but there is -evidence that there were at the time these depositions were taken, bonds greatly exceeding in amount those in controversy, issued lawfully to a railroad company, which were not identified by their numbers, or in any other manner, so as to prove ■that the bonds in controversy were not these bonds. Nor was there any evidence tracing all the bonds lawfully issued ,so as to show where these were or to repel the presumption that they were of that class. In short, the testimony on this branch of the subject is an absolute failure.
But it -is said that as these bonds did not bear the indorsement of the governor of the State of Texas, this fact alone was sufficient to prove that they were- unlawfully obtained from its treasury, ánd. that the rights of the State should therefore be protected in this suit.
The-opinions .of this, court in-the cases of Texas v. White *83 arid Chiles,* and Same v. Hardenberg,† are much relied on in support of this proposition, and in fact are supposed to control this case in all respects. But while it is true that the bonds in question in both those' cases (they were, in fact, but one case) were the bonds delivered to White and Chiles, and that some very important questions were decided concerning the relation of the State of Texas to the Union, and the validity, of her legislation while under control of the enemy during the war of the rebellion,' it is also true that the very matters of which the preseut bill is full, but of which there is a fiat denial and no proof whatever were supported in that case by sufficient evidence. On.an examination of the report of that case it will be seen that .the court was of opinion that it was established both in evidence and by the answers of some of the parties that the bonds then in ,con7 troversy were all of them issued to White and Ghiles, and the illegal contract on which they w.ere issued was in evidence, and the court was further of opinion that the parties' defendant had notice of those facts.
It is true that in the first of these cases the eminent judge who delivered the opinion, in addition .to deciding that the bonds were overdue when delivered to.White-and Chiles, and for that reason subject to an" inquiry as to the manner in which they obtained possession of them, gave as an additional reason why defendants could not hold them as bond fide purchasers, that they had not been indorsed by the governor as required by the statute of Texas. ¡And for that purpose he entered into an argument to show that the .State could by statute,, while those bonds were in her possession, limit their negotiability by requiring as one of its conditions the indorsement of the governor. . He, also said in reference to the repeal of that statute'by the rebeilegislature. of Texas, jn view of the supposed treasonable pdrpose.of it, that it was void'. . All of this, however, was-unnecessary to the. decision of .that case* and the soundness of the proposition may be doubted.
*84 In the subsequent case of Texas v. Huntington,* which was an action at law in reference to some of the bonds in the same category as those now before ,us, the justice who delivered the abovementioned opinion, qualifies it so far as to say that the repealing statute, though passed by a rebel legislature, is-not void-in'its application to bonds not issued for treasonable purposes. This is sufficient to relieve the present case of any embarrassment growing out of that branch of the opinion in the case of Texas v. White and Chiles.
This latter case, Texas v. Huntington, on a careful examination of it must be héld to dispose of the one before us. It is said, among other^things, that no óné other than a-holder of the bonds, or one who having held them has received the proceeds, with notice of the illegal transfer, for an illegal purpose^ caiv'fee held liable to the claim of the reconstituted State.” Again : “ Whether there was evidence in the present case establishing the fact of the unlawful issue and use, and the further fact of notice.to defendants, within the principles heretofore laid down, as now explained and qualified, is a question for the jury.”
In the case before us, which is a suit in equity, it was a question for the chancellor, to be established by evidence. As we have already said, there is no proof either of the unlawful issue or use, or purpose, nor of any notice to defendants of the probable existence of these facts.
Decree reversed, with directions to
Dismiss the bill.

 7 Wallace, 718.

 10 Id. 68.

 16 Wallace, 402.