## HALL *v.* BOX.

[94 South. 221.   No. 22832.]

BILLS AND NOTES. *Estoppel.   Negligence of maker of note will defeat defense of fraud in procurement in action by bona-fide purchaser, even though when one of two innocent persons must suffer by acts of third party, he who assisted in loss must bear it.*

Negligence on the part of a maker of a promissory note in signing and delivering it will defeat any right that he may claim or attempt to set up in defense of such note in the hands of a *bona-fide* purchaser, even though he may establish a claim of actual fraud practiced on him in its procurement.   Whenever one of two innocent persons must suffer by the acts of a third person, he who has enabled such third person to occasion the loss must sustain it.

APPEAL from circuit court of Humphreys county.
HON. S. F. DAVIS, Judge.

Action by S. M. Hall against C. B. Box.   From a judgment for defendant, plaintiff appeals.   Reversed and remanded.

*T. E. Pegram,* for appellant.

On behalf of appellant, we, with deference, direct the court's attention to the following decisions of this court with reference to the effect of signing a note or other instrument of writing without reading it, wherein it is held such negligence as to preclude the party from a right to complain of its contents. *Coats* v. *Bacom,* 77 Miss. 320; *I. C. R. R. Co.* v. *Rogers,* 76 So. 686; *Allen* v. *Monroe County,* 86 So. 297; *Germania Life Ins. Co.* v. *Bouldin,* 56 So. 613; *Insurance Co.* v. *Odom,* 56 So. 379.

*Parsons & Masons,* for appellant.

To effect the standing of a purchaser of a negotiable instrument as a *bona-fide* holder, it is not sufficient, if it only appears that the plaintiff took the note under circumstances that ought to have excited suspicion in the hands of a prudent and reasonable man but it must appear that he took the note under circumstances that showed he acted in bad faith or with want of honesty." *Kitchens* v. *Loudenback* (Ohio), 26 N. E. 981. See, also, *Cromwell* v. *Sac,* 98 U. S. 51.

In the latter case the court held: "The purchaser of negotiable securities before their maturity, whatever may have been their original infirmity, can, unless he is personally chargeable with fraud in procuring them recover against the maker the full amount of them, though he may have paid therefor less than their par value." These two cases were decided before and without reference to the negotiable instrument law.

"Mere negligence or want of diligence however gross is insufficient to deprive the purchaser of a note of the character of a *bona-fide* holder thereof. There must be actual knowledge of the defect therein or bad faith on his part to deprive him of that character." *Merrit* v. *Boyden,* 60 N. E. 907, 191, Ill. 136; *Cheever* v. *R. R. Co.,* 150 N. Y. 59, 44 N. E. 703; *Magee* v. *Badger,* 34 N. Y. 249; *American Exchange*

*N. Bank* v. *Bank & Belting Co.,* 148 N. Y. 705; *Knotts* v. *American Co.,* 148 N. Y. 455; *Bank* v. *Diefendof,* 123 N. Y. 202, and other cases.

Tiedeman on Commercial Paper, par. 289, says: "But the great weight of authority in this country, as well as reason supports the contrary doctrine, that the *bona-fide* character of a holder can only be destroyed by proof of his participating in a fraudulent transfer or interest. There cannot be any doubt as to the great value to the commercial world of the latter ruling. If a banker or other endorsee of a negotiable instrument had to make an inquiry into every suspicious circumstance that attended the proffer of instruments of negotiation, it would clog the wheels of commerce and deprive commercial papers of its chief value to the commercial world."

BEASLEY, C. J., in *Hamilton* v. *Vaught,* 34 N. J. L. 187: "Where plaintiff shows his purchase for value before maturity in good faith and discloses all the facts and circumstances attending his purchase, he is entitled to a direct verdict, unless there is substantial evidence or reasonable inference therefrom that he had actual knowledge of fraud or such facts that his taking of the instrument amounted to bad faith." *Downs* v. *Horton* (Mo.), 209 S. W. 595; *Johnson* v. *McMurry,* 72 Mo. 278; *Right Investment Co.* v. *Frisco Realty Co.,* 178 Mo. 72; · *Leavitt* v. *Taylor,* 163 Mo. 158.

This rule which has already been announced by a great many courts was adopted in the Negotiable Instrument Law, Section 56 of the said Law, par. 2634 of the Hemingway Code. The undisputed evidence in this case is that the plaintiff paid value for the instrument. It is well settled that payment of the full face value of a bill or note is not necessary to make one a holder for value although the consideration paid must be more than merely nominal. C. J., Bills & Notes, Vol. 8, page 486, section· 701.

"If value is parted with in the purchase of negotiable paper in good faith and without notice of any infirmity

therein, the title of the purchaser is not to be impugned by the mere fact that the value paid is disproportionate to the face value of the paper, provided that disproportion is not so great as under the circumstances of the case to raise the presumption of bad faith." *Young* v. *Lowry,* 192 Fed. 825 & 827.

The fact that the note sued on was purchased by plaintiff from an endorsee for one-third of its face value was held to be insufficient to show that plaintiff was not a *bona-fide* holder. *Ham* v. *Merrit,* 150 Ky. 11, 149 S. W. 1131; *Right Investment Co.* v. *Frisco Realty Co.,* 78 Mo. 72; *Oppenheimer* v. *Farmers' Bank,* 97 Tenn. 19, 56 Amer. States 778; *Schoen* v. *Houghton,* 50 Cal. 528; *Lay* v. *Missman,* 36 Iowa 305; *Citizens Bank* v. *Raymon,* 12 Neb. 541. Where notes were purchased for fifty per cent of their face value. *Cannon* v. *Canfield,* 11 Neb. 506; *Richmond* v. *Diefendof,* 51 Hun., 537; *Bailey* v. *Smith,* 14 Ohio 396, 84 Amer. Dec. 358; *McNamara* v. *Joes,* 69 Pac. 903.

In order to exonerate a party as between himself and an innocent holder where his signature of a negotiable note has been obtained by fraud, it must be shown that he was guilty of no negligence in affixing his name to the note or in not ascertaining the character of the instrument signed by him, *Fisher* v. *Von Behran,* 79 Ind. 19, 36 Amer. Reports 162.

The same principle of law was up held in the following cases: *Woolen* v. *Ulrich,* 64 Ind. 120; *Kimbell* v. *Christie,* 55 Ind. 140; *Roach* v. *Karr,* 18 Kas. 528, 26 Amer. Reports 788; *Pa. R. R. Co.* v. *Shea,* 82 Pa. State 198; *Lindley* v. *Hoffman* (Ind.), 53 N. E. 471; *Douglass* v. *Matting,* 4 American Reports 238, 29 Iowa 498.

We submit that under the facts in this case and the law, that the defendant is guilty of negligence in signing the paper sued on in this case, if he signed it without knowing it was a note, and that the peremptory instruction to find for the plaintiff, should have been given.

*Barbour & Henry* and *E. L. Brown,* for appellee.

There was no issue of whether or not the plaintiff was a *bona-fide* purchaser for value without notice, for the allegation in the declaration, that he was a "holder in due course," was a mere conclusion of the pleader, and raised no issue; besides which, being such holder is immaterial, if the instrument sued on is not the writing obligatory of the defendant. It will be observed, therefore, that both as a matter of substantive law and as matter of pleading, whether or not he was such holder is wholly immaterial.

There was no issue of whether or not the appellee was guilty of negligence in permitting the writing, in form, his negotiable instrument, to be placed in circulation, for there was no replication to raise such issue, and the declaration hinted at none, such pleading not being capable of raising such issue.

The plaintiff deliberately went to trial on the issue, whether or not the instrument sued on was the writing obligatory of the appellee; and the jury, on a clear conflict of evidence, between Golden, for the appellant, and Box and Mrs. Webb, for the appellee, found for the appellee. We asked for no instruction on any other issue, and introduced no evidence on any other issue; and all instructions asked, and evidence introduced, on any other issue by the plaintiff were irrevelant.

The paper sued on, the jury found, was obtained by the trick and device of inducing Box to sign, and attempting to sign, an application for stock, and substituting therefor an instrument which, in form, was a promissory note. He read an application, thought he signed an application, thought he endorsed an application; an application was the only instrument that was mentioned as one for him to sign; no mention was made of a promissory note, no promissory note was read by him, no promissory note was he asked, or did he intend, to sign; and, therefore, no such instrument could become his writing obligatory, for he never assented to the signing of any such instrument; and, hence, the plea, that he "did not make and

did not believe the writing in the said declaration mentioned," was, as a matter of law, literally true. The jury so found, and they were the sole and only judges of whether or not the issue tried was sustained by the evidence.

The case of *Foster* v. *McKinnon,* 38 L. J. Repts. (N. S.) 310, decided by the court of common pleas in 1869 seems to be the one of first impression and the court there stated the case and decided it thus: "This was an action by the plaintiff as indorsee of a bill of exchange for three thousand dollars against the defendant as indorser. The defendant, by one of his pleas, traversed the indorsement, and by another alleged that the defendant's indorsement was obtained from him by fraud. The plaintiff was a holder for value before maturity, and without notice of any fraud. There was contradictory evidence as to whether the indorsement was the defendant's signature at all, but, according to the evidence of one Callow, the acceptor of the bill, who was called as a witness for the plaintiff, he, Callow, produced the bill to the defendant (a gentleman far advanced in life) for him to put his signature on the back, after that of one Cooper who was payee of the bill and first endorser, Callow not saying that it was a bill, but telling the defendant the instrument was a guaranty. The defendant did not see the face of the bill at all, but the bill was of the usual shape and bore a bill stamp, the impress of which stamp was invisible at the back of the bill. The defendant signed his name after Cooper's, he, the defendant, as the witness stated, believing the document to be a guaranty only.

The lord chief justice told the jury that if the indorsement was not the defendant's signature, or if, being his signature, it was obtained upon a fraudulent representation that it was a guaranty, and the defendant signed it without knowing that it was a bill, and under the belief that it was a guaranty, and if the defendant was not guilty of any negligence in so signing the paper, the defendant was entitled to the verdict. The jury found for the defendant. A rule *nisi* was obtained for a new trial, first,

on the ground of misdirection in the latter part of the summing up, and, secondly, on the ground that the verdict was against the evidence.

In *Thoroughgood's case,* 2 Rep. 9b, it was held that if an illiterate man have a deed falsely read over to him, and he then seals and delivers the parchment, that parchment is nevertheless, not his deed. In a note to Thoroughgood's case, 2 Rep. 9b, in Frazier's Edition of Coke's Reports, it was suggested that the doctrine is not confined to the condition of an illiterate grantor and a case in Kelway's Reports, p. 70, is cited in support of this observation. *Swan* v. *The North British Australasian Company,* 2 Hurls, and C. 175; s. c. 32 L. J. Rep. (N. S.) Exch. 573.

We are not aware of any case in which the precise question now before us has arisen on bills of exchange or promissory notes, or been judicially discussed. In the case of *Ingram* v. *Primrose,* 7 Co. B. R. (N. S.) 83, and the case of *Nance* v. *Davy,* 5 Ala. 370; s. c. 1 Parsons on Bills, 114n., both cited by the plaintiff, the facts were very different from those before us, and have but a remote bearing on the question. But in *Putman* v. *Sullivan,* 4 Mass. 45, s. c. 1 Parsons on Bills, 111n, a distinction is taken by Chief Justice PARSONS between a case where an indorser intended to indorse such a note as he actually indorsed (being induced by fraud to indorse it), and a case where he intended to indorse a different note and for a different purpose; and the court intimates an opinion that even in such a case as that a distinction might prevail to protect the indorser, guarding themselves, however, as the chief justice has done in the case now before us, with the proviso that the indorser is not chargeable with any laches, negligence, or misplaced confidence in others, "which last is but a species of negligence. The distinction in the case now under consideration is a much plainer one, for on this branch of the rule we are to assume that the indorser never intended at all, but to sign a contract of an entirely different nature. For these reasons we think the direction of the lord chief justice was right." *Whitney* v. *Snyder,* 2 Lans. 477; *Gibbs* v. *Linabury,* 22 Mich. 429.

.The supreme court of this state, in *Bank* v. *Rhodes,* 96 Miss. 700, reviews these two cases and distinguishes them on the ground that "the testimony makes it perfectly clear that the appellee (the maker) could read, and that he did read, practically the whole order, and states the contents of the order perfectly, with the exception that he did not know of any free watch to be given," saying: "It would be utterly subversive of the security of commercial paper to hold that the maker of the note, who could read, was so grossly negligent as not to inform himself of the contents of the note he was signing, when, too, he did read and knew the contents of the order, he might defeat such note in the hands of an innocent holder for value without notice." The soundness of the Foster and Snyder cases was distinctly recognized and endorsed by the clearest implication. Indeed, there cannot be sound reason assigned in support of the contrary.

We presume that the soundness of the Foster and Snyder cases was distinctly recognized and endorsed by the clearest implication. Indeed, there cannot be sound reason assigned in support of the contrary. We presume that the soundness of these decisions will not be questioned, for the proposition goes to the very essence of the law of contract, the assent of the mind of the maker to the terms of the contract sued on, but it will be contended that the appellee was negligent in signing an instrument, which was a promissory note, believing it to be a contract, merely.

Fortunately for the appellee, this court has settled that, as a matter of law, he was not guilty of negligence, in the case of *Simmons* v. *Atkinson,* 69 Miss. 862; *Bank* v. *Merkel,* 97 Miss. 824; *Goldberg* v. *Lewis,* 67 So. 824. But section 15 must be read in connection therewith.

The case of *Linick* v. *Nutting,* 140 App. Div. 265, under the Negotiable Instrument Act of New York,. passing upon the liability of a maker who signed a blank check which was stolen from his desk and passed into the hands of an innocent holder, reviewed the authorities under the law merchant.

131 Miss.—15

We think the reasoning of this case conclusive. If an incomplete instrument had not been delivered, it will not, if completed and delivered, without authority, be a valid contract in the hands of any holder. The principle is accurately stated by 8 Corpus Juris, page 790, "Exception to Rule." *Walker* v. *Ebert* (Wis.), 9 Am. Rep. 548; *Home Nat'l Bank* v. *Hill* (Ind.), 74 N. E. 1086.

Where defendant having been fraudulently induced to indorse a bill, believing that he was signing a guaranty was held not bound thereby, on the ground that the mind of the signer did not accompany the signature. *Briggs* v. *Ewart* (Mo.), 11 Am. Rep. 445; *Champion* v. *Ulmer,* 70 Ill. 322; *Yokama Valley Bank* v. *McAllister* (Wash.), 1 L. R. A. (N. S.) 1075.

An instrument in the form of a negotiable note, signed by a person under circumstances devoid of any negligence on his part, and delivered by him in ignorance of its true character and by means of fraud, will be regarded as a forgery and cannot be enforced, even in the hands of a *bona-fide* purchaser. *Green* v. *Wilkie* (Iowa), 36 L. R. A. 434; *Trambly* v. *Richard,* 130 Mass. 259; *Gibbs* v. *Linabury* (Mich.), 7 Am. L. 675; *Griffith* v. *Kellogg* (Wis.), 20 Am. Rep. 48; *First National Bank* v. *Wade* (Okla.), 35 L. R. A. (N. S.) 775. To the same effect see the following cases: *Hutkoff* v. *Moje,* 46 N. Y. Supp. 905; *Aukland* v. *Arnold* (Wis.), 111 N. W. 212; *Green* v. *Wilkie* (Iowa), 36 L. R. A. 434.

We have shown that, under the law merchant, the procurement of a promissory note by the trick and device of misrepresenting the character of the paper, imposed no liability upon the signer. *Foster* v. *McKinnon,* 38 L. J. Rep. (N. S.) 310; *Whitney* v. *Snyder,* 2 Lans. 477; *Bank* v. *McAllister,* 37 Wash. 566; *Detwiler* v. *Totten,* 59 Md. 447; *Caulkins* v. *Whisler,* 29 Ia. 495; *Deputy* v. *Schuyler,* 45 Ills. 306; *Salley* v. *Ferrell,* 95 Me. 553; *Benson* v. *Huntington,* 21 Mich. 415; *Boxendale* v. *Bennett,* 4 Eng. Rul. cases, 637; *Bank* v. *Ins. Bridge,* 159 N. Y. 362; *Roberts* v. *McGrath,* 38 Wis. 52.

We have shown that the Uniform Negotiable Instrument Act was designed to codify and not to change, the law merchant, except as to "minor differences, in the various jurisdictions," and "is not a new law in the strict sense," and that, in cases of doubt, the law merchant must be resorted to for its construction. *Goldberg* v. *Lewis,* 67 So. 842; Edward Mayes on B. & C. Statute of Miss. 53; *Wetlaufer* v. *Baxer,* 137 Ky. 362.

We have shown that one induced to sign a promissory note by trick or device, believing the representation that it was a paper of a wholly different character, was not liable to an innocent holder for value, on the theory of negligence. *Simmon* v. *Atkinson,* 69 Miss. 862. We have shown that, under the negotiable instrument act, sections 15 and 16 must be construed together, and that an unauthorized filling in and delivery to an innocent holder, imposes no liability upon the maker. *Linick* v. *Nutting,* 140 App. Div. 265.

It would, therefore, seem to be the inevitable conclusion that appellee is not liable in this case.

ETHRIDGE, J., delivered the opinion of the court.

The appellant sued the appellee upon a promissory note reading as follows:

"16,500.00.                    Belzoni, Miss., July 19, 1020.

"One year after date I promise to pay to myself or bearer at Bank of Belzoni, Belzoni, Miss., sixteen thousand five hundred dollars, with eight per cent. interest per annum from date until paid, value received. If this note is placed in the hands of an attorney for collection, the makers and indorsers hereof agree to pay the holder an attorney's fee of ten per cent. upon the amount due. Demand, protest and notice waived by makers and indorsers hereof.

"Post Office, Midnight, Miss.

                    "[Signed]  C. B. Box."

The appellant alleged that he was the owner and holder of said note in due course, and payment had been refused,

etc., demanding judgment. The defendant filed a plea of *non est factum.* This plea is, in full, as follows:

"And for a further plea in this behalf, the defendant says that the plaintiff ought not to have his aforesaid action against him, the defendant, because he says that he did not make and did not deliver the writing in the said declaration mentioned, in the manner and form as plaintiff has above in that regard alleged; and of this the defendant puts himself upon the country.

"[Signed] BARBOUR & HENRY,
          "MORTIMER & SYKES,
               Attorneys for Defendant.

"State of Mississippi, County of Humphreys.

"Personally appeared before me, the undersigned officer, in and for the county and state aforesaid, C. B. Box, who on oath states that he did not make and he did not deliver the instrument sued on in the above-styled cause, purporting to be a promissory note of the said Box; and that he did not promise in the manner and form set forth and alleged by said declaration.     [Signed] C. B. Box.

"Sworn to and subscribed before me, this 20th day of February, 1922.

[Signed] W. P. SHACKLEFORD, Cir. Clk.,
          "By R. L. WAUGH, D. C. [Seal.]"

Indorsed: "Filed Feb. 23, 1922. W. P. SHACKLEFORD, Clerk."

The appellant testified that he bought the note in question from one L. B. Bays, cashier of the Bank of Houston, Miss., and that he paid twelve thousand five hundred dollars worth of county bonds and government Liberty and Victory bonds, and that he had no notice of any defense or infirmity in the note at the time of its purchase, and that he bought on the faith of the commercial rating of Box, the defendant; that the commercial rating of Box showed he was amply solvent. This purchase was made in the spring of the year 1921, prior to its maturity in July, 1921.

The plaintiff also introduced Mr. Golden, who testified that in 1920 he was employed by Mr. J. W. McClintock of Belzoni, Miss., to sell stock in the Arkansas & Texas Oil Company, a corporation in which Mr. McClintock was a stockholder and officer, and that he went to Mr. Box and sold him stock and took the note in question in payment therefor. This note was signed and indorsed on the back by Mr. Box at the time and was left by the witness at the Bank of Belzoni, in which bank Mr. McClintock also had some interest. That he left a memorandum for Mr. McClintock and that the note was signed at Box's residence, on his front gallery, at Midnight, Miss. Mr. Box testified that Mr. Golden came to his place some time prior to the 19th of July, 1920, and desired to sell some oil stock, but he told him that he had no money and that he was barely able to finance his business operations, and that Golden stated that he did not desire his money, that he wanted him to listen to his scheme, and that he explained his scheme, and that the proposition was to make him an honorary stockholder in the oil company because of his prominence, and stated that the dividends on the oil stock would pay for them and that he did not sign any note knowing it to be a note, but that Golden presented him with an application for stock in an oil company or a note in that form, and he read it, and after reading it he was called momentarily away by a negro for some purpose, and that he returned and signed the application which was on a brief case or something of that kind, and that Golden told him then that he wanted him to sign it on the back so the company would understand that the dividend would be applied on the payment of the stock. That he never signed any note consciously or knowingly, and that he only signed a stock application, or a note in that form. Box testified that the signature on the back of the note was his genuine signature, but could not say positively whether the signature on the face of the note was his signature or not. That it looked a good deal like his signature, but he was inclined to think it was not his signature

because the letter "x" was not made as he usually made it in signing his name. A number of instruments were presented to Box which he admitted signing and were introduced in evidence for purposes of comparison. It appears from his testimony that in some of the writings which he signed that the letter "x" was similar to the one on the face of the note and especially in reference to the registration books when he signed as a voter. There were a number of checks and notes introduced for purposes of comparison. Mr. Box's testimony as to the signing of the note and as to the circumstances is corroborated by a woman who was living at Box's house and was assisting him in his business, and who was sitting in her room near a window right near to where Box and Golden sat during the conversation. Another witness, Mr. Castleman, testified that he knew Mr. Box's signature and had had a number of transactions with him, and that the letter "x" on the face of the note in his judgment was not Mr. Box's signature; that the signature was not Mr. Box's, as the letter "x" in his name was not made as Box signed his name to checks and notes in his dealing with Castleman. Mr. Castleman was also asked about certain of the admitted signatures of Mr. Box, and said that in his judgment they were not Box's signature, for the reason that the letter "x" was not made as Mr. Box made it in signing his name to checks, etc.

It appears from the evidence of Box that after the transaction with Golden the shares of stock came to him accompanied by a dividend check for July, 1920, and that subsequently another check for another dividend was received by him, but Mr. Box testified that no letter accompanied these checks and stock, and that he was expecting the confirmation from the company of the transaction in accordance with Golden's representations; that he laid the stock and checks in the pigeonhole in his desk and kept them there, refusing to bank his checks, and he had no notice of the note until he was notified a few weeks before the maturity of the note by Mr. Hall that he held the

note and would expect its payment at maturity; that he
had no recollection of any such note and searched his books
and could find no charge indicating such note or debt, and
that in the search he found the stock and checks in the
pigeonhole where they had been placed; that he thereup-
on wrote the company a letter, which appears in the record,
in which he claimed that the company had not complied
with Golden's agreement and requested the return of his
note, using the term "note" in the said letter.    He also
wrote Mr. Hall desiring further information about the
note he held, stating he had no recollection of such note,
and that it was unusual to give a note maturing at that
time of the year when no crops were moving, and that
Mr. Hall wrote him back giving the date of the maturity
of the note and informing him that unless it was paid suit
would be brought.

The plaintiff requested and was refused the following
instructions:

"The court charges the jury that, if you find the de-
fendant carelessly or negligently failed to exercise reason-
able care in observing the nature or effect of the instru-
ment sued on when he signed or indorsed the same, then
he is estopped to deny that he did not know that he was
then executing his promissory note; and, under such find-
ing, you must return a verdict for the plaintiff, even though
you may believe the defendant did not know that said in-
strument was a promissory note, provided you find that
the plaintiff purchased said note before maturity for value
in good faith and without actual notice of defect of title
of the person from whom plaintiff bought said note.

"The court charges the jury for the plaintiff that, if you
find that the defendant signed or indorsed the instrument
here sued on, without taking the precaution that an ordi-
narily prudent man would take under the circumstances to
observe the nature of the instrument he was signing or
indorsing, you will find for the plaintiff, although you may
believe that the defendant did not actually know said in-
strument was a promissory note, provided you further find

that the plaintiff is a *bona fide* holder of the instrument sued on in due course."

The court granted the defendant the following instruction, among others:

"The court instructs the jury that you will find a verdict for defendant unless it appears from the evidence that the note sued on was actually signed and delivered knowingly and consciously by Box."

It is urged by the appellant that he should have had a peremptory instruction which he requested and was refused, and also that it was error for the court to refuse the requested instructions above set out, also that it was error for the court to give the instruction above set out for the defendant. The appellee contends that he is not liable on the note because of fraud perpetrated and because the instrument sued on was not the instrument which he read and which was read to him as being what he signed at the time.

We are of the opinion that the plaintiff should have been given the instructions set out announcing the principle that if the defendant was negligent in the transaction that he would be liable on the note in the hands of a *bona-fide* purchaser. The issue should have been submitted to the jury as to whether or not, under all of the facts and circumstances, Box was guilty of negligence in failing to exercise the care and prudence that an ordinary man would have exercised. We think that a party who signs a note without exercising such ordinary and reasonable care as an ordinarily prudent person should under the circumstances, and his note passes into the hands of a purchaser for value without notice, and he cannot set up a defense that involves his negligence as against such *bona fide* purchaser. *Bank* v. *Rhodes,* 96 Miss. 700, 51 So. 717.

The law governing defenses to negotiable instruments on the ground that the maker or indorser was deceived into signing a negotiable instrument, believing that it was some other kind of instrument, and without knowing its

true character, is very clearly stated in the text in 8 Corpus Juris, 792, 793:

"*Necessity of Freedom from Negligence.*—It is absolutely essential, however, that an obligor, to invoke this immunity, must exercise ordinary diligence, and in no way negligently contribute to the imposition. Negligence on the part of the maker or acceptor will defeat any right that he may claim or attempt to set up in defense of such note in the hands of a *bona fide purchaser,* even though he may establish a claim of actual fraud practiced on him in the procurement of the instrument. Hence one in possession of his faculties who has the opportunity for examination and relies on the representations of persons with whom he is dealing cannot claim exemption for his act, if the instrument which he signed should prove other than he had been led to believe. The reason for this rule is that whenever one or two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.

"*What Constitutes Negligence.*—It is impossible to state any general rule as to what acts or conduct of defendant will amount to such negligence as will permit a recovery in the cases now under discussion, since, as will be seen from an examination, of the authorities, the different courts have taken very widely different views of the subject. Negligence is generally a question for the determination of the jury, all the facts and circumstances of the case being considered. But where a state of facts is admitted or not disputed, negligence may exist as a matter of law. The jury may take into consideration, it would seem, the age and mental and physical condition of the person signing, as well as mercantile usages of trade and commercial intercourse as to negotiable paper."

*Reversed and remanded.*