WILKINSON v. LOVE, SUPERINTENDENT OF BANKS.*

(Division A.  Feb. 27, 1928.)

[115 So. 707.  No. 26171.]

1. APPEAL AND ERROR. *Appellant not prejudiced thereby cannot take advantage of error against other parties not joining in appeal.*

   Appellant not prejudiced thereby cannot take advantage of any error against the other parties to proceeding who have not joined in appeal.

2. Appeal and Error. *Where parties permitted cause to proceed to judgment, validity cannot be questioned on ground summons to other parties not joining in appeal was not issued, and cause will not be remanded to docket for that purpose (Hemingway's Code 1927, section 18).*

Under Code 1906, section 43 (Hemingway's Code 1927, section 18), providing that any one or more of parties to judgment or decree may appeal, and if all parties do not join in appeal, clerk of court shall issue summons to those not joining to appear before Supreme Court and unite in appeal, where all parties permitted cause to proceed to judgment on appeal without calling attention of court to fact that certain parties defendant had not been summoned, validity of judgment or decree cannot be questioned on ground that such summons was not issued and served, and it was too late to ask that decree be set aside and cause remanded to docket to have summons issued and served.

3. Appeal and Error. *Within statutory period, one or more parties to judgment may appeal without consent of others (Hemingway's Code 1927, sections 18, 2650).*

Under Code 1906, section 43 (Hemingway's Code 1927, section 18), any one or more of parties to judgment or decree may appeal therefrom without consent of the others within time limit prescribed by Laws 1926, chapter 153 (Hemingway's Code 1927, section 2650).

4. Appeal and Error. *Those summoned to join in appeal must give bond, and they cannot join after cause has proceeded to judgment (Hemingway's Code 1927, sections 18, 20).*

Under Code 1906, section 43 (Hemingway's Code 1927, section 18), those who do not join in an appeal cannot be required to do so, and although summoned to join they can do so only by giving bond with sureties as if they had appeared in first instance as required by Code 1906, section 45 (Hemingway's Code 1927, section 20), and they cannot join after cause has proceeded to judgment.

5. Appeal and Error. *After expiration of six months from rendition of judgment, parties summoned cannot join in appeal (Hemingway's Code 1927, sections 18, 2650).*

Limitation on appeals prescribed by Laws 1926, chapter 153 (Hemingway's Code 1927, section 2650), applies to those who are summoned to join in an appeal under Code 1906, section 43 (Hemingway's Code 1927, section 18), as well as to original ap-

pellant, and after expiration of six months from rendition of judgment or decree appealed from parties so summoned cannot join in appeal.

6. BILLS AND NOTES. *Assignee of overdue negotiable paper does not take it with notice of secret equities of third parties or those arising collaterally.*

Although assignee of overdue negotiable paper takes it with notice of all equities or defenses which maker may have, he does not take it with notice of secret equities of third parties or those arising out of collateral transactions.

7. MORTGAGES. *Evidence that assignee of overdue note and trust deed took in good faith without knowledge of bank's collateral equities held to render erroneous decree awarding bank priority.*

In suit to establish priority of lien of deed of trust executed direct to bank by grantor in place of deed of trust securing note which had been pledged to bank, where bank had negligently returned original overdue negotiable note and deed of trust to grantee, and grantee assigned same to brother as collateral security, and brother's testimony that he had no knowledge of existence of second deed of trust to bank or that claim of bank that first deed of trust had been paid and satisfied, or that it held a lien that was superior to lien of instrument assigned to him was uncontradicted, decree establishing priority of lien of deed of trust held by bank must be reversed.

8. ESTOPPEL. *Bank taking trust deed direct from grantor must bear loss caused by negligence in returning pledged trust deed and note to pledgor who assigned same.*

Where bank which held, note and deed of trust securing same as collateral took deed of trust direct from grantor in place of same and negligently placed original note and deed of trust in hands of pledgor, the payee, without any notation thereon to indicate that note had been paid, or that lien had been canceled or in any way subordinated to lien of deed of trust held by bank, so that payee was clothed with apparent authority to negotiate overdue note and security and payee assigned same to one having no notice of equities of bank or of its claim to superior lien, bank must bear loss resulting from negligence of its officers.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 1006, n. 58; p. 1009, n. 76; p. 1011, n. 81; 4CJ, p. 698, n. 19; Bills and Notes, 8CJ, p. 479, n. 51, 52; Estoppel, 21CJ, p. 1177, n. 14; Mortgages, 41CJ, p. 601, n. 64.

APPEAL from chancery court of Bolivar county, Second district.

HON. HARVEY McGEHEE, Chancellor.

Suit by J. S. Love, Superintendent of Banks, and the liquidating agent of the Shelby-Citizens' Bank & Trust Company, against J. L. Wilkinson and others, and suit by Mrs. M. C Wilkinson against J. S. Love, liquidating agent of the Shelby-Citizens' Bank & Trust Company, which were consolidated. From the decree, J. L. Wilkinson appeals. Reversed and remanded.

This cause was reversed and remanded May 23, 1927, and suggestion of error was filed May 30, 1927. The cause was continued on suggestion of error to the September term, 1927, of this court. Pending suggestion of error there was an attempt to bring other appellants into the appeal by filing appeal bonds. Motions filed to dismiss these several appeals. Suggestion of error sustained, the attempted appeals dismissed, and cause reversed and remanded. The former opinion was withdrawn.

ON SUGGESTION OF ERROR.

*Shands, Elmore & Causey,* for appellants.

A motion was made to exclude from the room M. L. Wilkinson and Mrs. M. C. Wilkinson, parties defendant. This was a violation of their constitutional rights, notwithstanding which protest, the learned chancellor ordered them out of the hearing of the witness, J. L. Wilkinson. Such action of the court was error. *French* v. *Sale,* 63 Miss. 386. This seems to be the first pronouncement in Mississippi on this question, the court holding that it is a deprivation of a constitutional right to exclude a party, though holding that the court in its discretion and in the interest of justice may reasonably require that such party shall testify as first witness on

his side, or must remain out of the court room. In this case there were three parties, namely J. L. Wilkinson, M. L. Wilkinson and Mrs. M. C. Wilkinson, and it was urged to the court that they could not all three testify at the same time. This question was squarely presented to our court, and has been passed upon. See *Bernheim* v. *Didrell,* 66 Miss. 199; Dec. Dig., Trial, paragraph 41 *et seq.*

This two thousand two hundred fifty dollar-note was a negotiable instrument under the provisions of the Uniform Negotiable Instrument Law, being the law of Mississippi at the time of the execution of this note, and is good in the hands of a holder in due course. M. L. Wilkinson was in all particulars a holder in due course except that he took the note after maturity, and the law is that one who takes a negotiable instrument after maturity is charged with notice of any defenses that the maker or indorser thereof may have, but not with notice of latent or secret equities of third parties. *Ethridge* v. *Campbell,* 215 S. W. 441; *Salt Lake Investment Company* v. *Stoutt,* 180 Pac. 182; *Gee* v. *Parks,* 193 S. W. 767; *Beneficial Loan Association* v. *Hillery,* 113 Atl. 324; *Hanssen* v. *Pusey & Jones Company,* 279 Fed. 488; *Reardon* v. *Cockrell,* 103 Pac. 457. We wish to call the court's special attention here to the further fact that the bank acting through its proper officer, placed this note, bearing every evidence of being a valid instrument, in the hands of the payee thereof, so that he could negotiate it with every appearance of right. This officer of the bank says that this resulted from his negligence. In *Reardon* v. *Cockrell, supra,* we find the following announcement of the law: "The appellants themselves having placed the note and mortgage in possession of Sullivan and the co-operative company, for the purpose of permitting them to negotiate the same to third persons, if a loss ensues therefrom, it must be borne by the party who negligently made the loss possible." *Burtt* v. *Schoening,*

244 Pac. 381. This doctrine is expressly adopted in Mississippi in *Hall* v. *Box,* 131 Miss. 218.

*Clark, Roberts & Hallam,* for appellee.

Only J. L. Wilkinson and M. L. Wilkinson and Louise Neely, substituted trustee, were parties to this suit. Mrs. M. C. Wilkinson was not a party. There was another suit in which Mrs. M. C. Wilkinson was complainant, and that suit was tried at the same time that the present suit was tried, and by amendment J. L. Wilkinson and M. L. Wilkinson were made joint complainants with her in that suit. Therefore, the exclusion of Mrs. M. C. Wilkinson. from the court room while J. L. Wilkinson was testifying can avail the appellant nothing. M. L. Wilkinson was the real party in interest, and not J. L. Wilkinson. M. L. Wilkinson it was who claimed to own the two thousand two hundred fifty-dollar note as a *bona-fide* purchaser for value. When the shadow vanishes and the substance is seen, J. L. Wilkinson was merely a witness for the defendant M. L. Wilkinson. It was, therefore, right and proper that M. L. Wilkinson should retire from the court room while his witness J. L. Wilkinson was testifying. *French* v. *Sale,* 63 Miss. 386, is relied on by appellant. The case is not parallel with the case at bar. In the present case there were two defendants, and both of them could not testify in their own behalf at the same time. It was therefore necessary that one should retire while the other one was testifying in his own behalf. This seems to be the effect of chancery rule number 11 (Griffith's Mississippi Chancery Practice, page 829). There is a distinction between *Bernheim* v. *Dibrell,* 66 Miss. 199, and the case at bar. There was no joint claim to the property as in the case cited. J. L. Wilkinson can have no just ground of complaint. He was not excluded from the court room, but was allowed to remain in the court room throughout the entire trial.

One who takes a negotiable instrument after maturity cannot be holder in due course. Section 2630, Hemingway's Code 1917. Further than this, J. L. Wilkinson negotiated this instrument to M. L. Wilkinson in breach of faith and under such circumstances as amounted to a fraud. The title of J. L. Wilkinson to this note therefore, when he negotiated it to M. L. Wilkinson was defective under section 2633 of Hemingway's Code 1917. And the fact that the instrument was overdue was notice to M. L. Wilkinson of this defect. At the time this note was negotiated to M. L. Wilkinson by J. L. Wilkinson, the bank claimed no latent or secret equities therein. It merely claimed that this note had been paid and satisfied and extinguished by the execution and delivery of the two thousand and fifty dollar-note by Mrs. M. C. Wilkinson. At that time the two thousand two hundred fifty dollar-note was dead. It had no legal existence. For these reasons, there is no question in this case as to latent or secret equities.

The question is: did the two thousand and fifty dollar deed of trust from M. C. Wilkinson to the bank constitute a first lien on lots 84 and 85 in block 9 of Williamson's Addition to the town of Shelby, and did M. L. Wilkinson have notice of that fact? If M. L. Wilkinson had gone to the chancery clerk's office and examined the land records he would have found that the Shelby Citizens' Bank & Trust Company held a deed of trust, which so far as the records showed, constituted the first and only lien on those lots. He would also have found that J. L. Wilkinson never had a deed of trust on these lots, but that the two thousand two hundred fifty dollar deed of trust which was given to him was not a lien on these lots at all, but purported to create a lien on entirely different property, to-wit: Two lots described as being in Williamson's Addition to the town of Shelby; that the deed of trust held by the bank was filed for record on April 2, 1924, and was actually recorded in the chancery clerk's office six

149 Miss.—34.

months before the two thousand two hundred fifty dollar-note was transferred to him. The object of filing a deed of trust for record is to give notice to the world of its contents. Sections 2291 and 2292, of Hemingway's Code 1917; chapter 239, Laws of 1924; *Stovall* v. *Judah*, 74 Miss. 747.

COOK, J. The appellee, J. S. Love, superintendent of banks, and the liquidating agent of the Shelby-Citizens' Bank & Trust Company, instituted suit in the chancery court of Bolivar county against J. L. Wilkinson, M. L. Wilkinson, and Louise Neely, trustee, seeking to establish priority of the lien of a certain deed of trust executed by Mrs. M. C. Wilkinson in favor of the Shelby-Citizens' Bank & Trust Company, and also seeking an injunction to restrain the foreclosure of a deed of trust of prior date executed by the said Mrs. M. C. Wilkinson to J. L. Wilkinson, and by him assigned to M. L. Wilkinson. Thereafter Mrs. M. C. Wilkinson filed a bill against the said J. S. Love, liquidating agent, praying the issuance of a writ of injunction restraining the foreclosure of the deed of trust in favor of the bank until the priorities of the two deeds of trust could be determined and established.

Preliminary injunctions were issued in these causes, and upon motions being made to dissolve them, the causes were, by agreement of the parties, consolidated, and submitted as if on final hearing; and a decree was entered holding that the deed of trust given by Mrs. M. C. Wilkinson to the Shelby-Citizens' Bank & Trust Company was a lien on the property covered thereby superior to the deed of trust executed by her to J. L. Wilkinson, and making perpetual the injunction restraining J. L. Wilkinson, M. L. Wilkinson, and Louise Neely, trustee, from foreclosing the deed of trust held by M. L. Wilkinson; and from this decree J. L. Wilkinson prayed for and was granted an appeal, which he perfected by executing a proper bond. Mrs. M. C. Wilkinson, M. L. Wilkinson,

and Louise Neely, trustee, executed no appeal or *super-sedeas* bond, and did not otherwise seek to secure or join in an appeal.

When the cause came on for hearing in this court, a decree was entered reversing and remanding the cause on the ground, as stated in the opinion, that:

"J. L. Wilkinson was a witness and a party to both proceedings. The court directed J. L. Wilkinson, under the rule, to retire from the court room, and refused to permit him to remain in the court room. This action of the court is assigned as error, and was excepted to in the lower court. . . . It was reversible error to have refused J. L. Wilkinson the right to remain in the court room during the trial of the case."

A suggestion of error has been filed, in which it is pointed out that the decision of the court is based on a misconception of facts as to the action of the court below, as shown by the record; that the record discloses that J. L. Wilkinson was not excluded from the court room at any stage of the trial; and, consequently, since no error was committed against the said J. L. Wilkinson, the sole appellant, he cannot complain, and is not entitled to a reversal of the cause. The fact is, that the record discloses that J. L. Wilkinson was not excluded from the court room, but it was Mrs. M. C. Wilkinson and M. L. Wilkinson who were excused while the said J. L. Wilkinson was testifying as a witness. This being true, no error was committed against J. L. Wilkinson, and, since he was in no way prejudiced thereby, he cannot take advantage of any error against the other parties to the proceeding who have not joined in the appeal. The suggestion of error will therefore be sustained, and the statement in the former opinion, that reversible error was committed in excluding J. L. Wilkinson from the court room, will be withdrawn.

Upon the filing of the suggestion of error, counsel for appellant sought to avoid the force and effect thereof by attempting to perfect an appeal on behalf of the other

parties defendant. In pursuance of this purpose, they secured the issuance of a summons by the clerk of this court for Mrs. M. C. Wilkinson, M. L. Wilkinson, and Louise Neely, trustee, to appear on the first Monday of July, 1927, and answer the appeal of J. L. Wilkinson in this cause. On July 4, 1927, M. L. Wilkinson and Louise Neely, trustee, filed an appeal and *supersedeas* bond in the sum of five hundred dollars, reciting that they were aggrieved by the decree entered in the said cause and de- sired to join in the said appeal, and conditioned to pay an satisfy any decree or final judgment that might be entered in this cause. Mrs. M. C. Wilkinson did not join in the execution of this bond, for the reason, as stat- ed in the brief of counsel, that she had died prior to the former hearing of this cause in this court.

In reply to the suggestion of error, counsel further stated that it was the intention and purpose of all the parties defendant to join in the appeal and their failure to do so was due to oversight and inadvertence; that the fact that they had not done so was not discovered until the filing of the suggestion of error; that since no sum- mons was issued for the parties defendant, who did not join in the appeal, this court was without power to hear the cause and proceed to final judgment; and that the decree previously entered should be set aside and the cause remanded to the docket, with leave to appellant to summon the other parties defendant within a fixed time.

In support of this contention, they cite section 43, Code 1906 (section 18, Hemingway's 1927 Code), which pro- vides:

"Any one or more of the parties to a judgment or decree may appeal therefrom; and if all the parties to a judgment or decree do not join in the appeal, the clerk of the court from which the appeal is taken shall issue a summons, when the appeal is taken, to such as do not join in the appeal to appear before the Supreme Court, at the return term of the appeal, and unite in the appeal;

and if they fail to obey the summons, they shall not afterward have the right of appeal, and the judgment or decree of the court below shall remain, in full force against them. .. . . The summons to join in appeal may be issued by the clerk of the Supreme Court at any time after the transcript shall be received by him, if applied to for it. . . ."

And they rely upon the case of *Tardy* v. *Rosenstock,* 118 Miss. 720, 80 So. 1, in which the effect of the failure to comply with this statute is discussed. In that case, however, the fact that summons had not been issued for all the parties defendant was called to the attention of the court before the cause was submitted, and the court was requested to affirm the cause on the ground that this statute had not been complied with. In the later case of *U. S. Fidelity & Guaranty Co.* v. *Jackson,* 123 Miss. 676, 86 So. 456, the court discussed the case of *Tardy* v. *Rosenstock, supra,* and said:

"It appears from this decision that it was improper for the appellant and appellee to proceed with the case on appeal here without issuing the summons to the defendant in appealing. The parties, however, did proceed without having the United States Fidelity & Guaranty Company summoned as required by this section, and evidently the court's attention was not directed to, or attracted to, the absence of the defendant in the court here."

The validity of the judgment from which the appeal was prosecuted was there upheld, but it was held that in the absence of a summons for the parties defendant not joining in the appeal, the *supersedeas* obtained by the first appellant would stay all proceedings on the judgment. Since all the parties in the case at bar permitted the cause to proceed to judgment without calling to the attention of the court the fact that certain parties defendant had not been summoned, we do not think the validity of the judgment or decree can now be called in question

on the ground that such summons was not issued and served, and it is now too late to ask that the decree be set aside and the cause remanded to the docket to enable the appellant to have such summons issued and served.

The appellant, J. L. Wilkinson, having, as hereinbefore stated, and while the cause was pending on suggestion of error, secured the issuance of summons for the other parties defendant, and two of the said parties having filed an appeal and *supersedeas* bond in an attempt to perfect their appeal, the appellee thereupon filed a motion to dismiss the appeals, so attempted to be perfected, on the ground, among others, that:

"(1) The appeal was not perfected within six months from June 30, 1926, the date of the decree in the lower court, and is therefore barred, as to each and all of said appellants.

"(2) The appeal has never been perfected as to Mrs. M. C. Wilkinson, her heirs, or legal representatives.

"(3) Each of the appellants has been guilty of inordinate delay and negligence in prosecuting said appeal.

"(4) The six months within which M. L. Wilkinson and Mrs. M. C. Wilkinson and Louise Neely could appeal from the decree of the lower court by executing bond expired prior to the death of Mrs. Wilkinson in February, 1927, and neither of said defendants executed such bond, or attempted to do so, or took any steps whatsoever to appeal from said decree."

In reply to this motion, the appellants contend that the filing of an appeal and *supersedeas* bond by the appellant, J. L. Wilkinson, stopped the running of the statute limiting the right of appeal to the Supreme Court to six months after the rendition of the judgment or decree appealed from, and that the other parties defendant could be summoned, and their appeal perfected after the expiration of the six-month limitation. Chapter 153 of the Laws of 1926 (section 2650, Hemingway's 1927 Code) provides:

"Appeals to the Supreme Court shall be taken within six months next after the rendition of the judgment or decree complained of, and not. after, saving, to persons under a disability of infancy or unsoundness of mind the like period after the disability shall have been removed."

Within the time limit prescribed by this statute, any one or more of the parties to a judgment or decree may appeal therefrom without the consent of the others. Those who do not join in the appeal cannot be required to do so, and, although summoned to join, they can only do so by giving bond, with sureties, as if they had appealed in the first instance, as required by section 45, Code 1906 (section 20, Hemingway's 1927 Code), and · they cannot join after the cause has proceeded to judgment. The limitation on appeals prescribed by the said chapter 153, Laws of 1926 (section 2650, Hemingway's 1927 Code), applies to those who are summoned to join in an appeal as well as to the original appellant, and after the expiration of six months from the rendition of the judgment or decree appealed from, parties so summoned cannot join in the appeal. The motion to dismiss the appeals of M. L. Wilkinson and Louise Neely, trustee, will therefore be sustained.

## ON THE MERITS.

The facts as shown by the testimony offered at the hearing of the cause are substantially as follows:

During the year 1920, the appellant, J..L. Wilkinson, was indebted to the Shelby Citizens' Bank, which afterwards became the Shelby-Citizens' Bank & Trust Company, in the sum of about seventeen thousand dollars, evidenced by a promissory note to which was attached as collateral security warehouse receipts for ninety-nine bales of cotton. The price of cotton having declined, the bank called upon the appellant to put up additional security for this indebtedness. Thereupon he pledged to

the bank a note for two thousand two hundred fifty dollars, signed by his mother, Mrs. M. C. Wilkinson, and secured by a deed of trust on her home. This deed of trust was duly recorded, and constituted a first lien on the home of Mrs. Wilkinson. Thereafter this indebtedness of J. L. Wilkinson was rearranged, a large sum apparently being charged to profit and loss, while the balance was renewed in two notes, one for the sum of nine thousand five hundred eighty-nine dollars and fifty-three cents and the other for two thousand dollars. The cotton receipts were continued as security for the large note, while the above-mentioned note and deed of trust, executed by Mrs. M. C. Wilkinson to J. L. Wilkinson, were by agreement attached to the two thousand dollar-note as collateral security therefor. None of this indebtedness having been paid, except such part thereof as may have been discharged by the sale of cotton represented by the pledged cotton receipts, the bank applied to the credit of the large note the sum of nine hundred ninety-six dollars and ninety-six cents which J. L. Wilkinson had on deposit in the bank. Wilkinson apparently resented this action on the part of the bank, and contended that if applied at all, the deposit should have been applied to the note which was secured by the pledge of the deed of trust on his mother's home, and he thereafter refused to renew or pay his note to the bank. The bank officials testified that after some controversy with Wilkinson it was finally agreed that the bank would waive the interest accrued on this two thousand dollars and allow sufficient credit on the principal to leave a balance of two thousand and fifty dollars due, and that it would accept a note for that sum signed by Mrs. M. C. Wilkinson, payable directly to the bank, this note to be secured by a new deed of trust on Mrs. Wilkinson's home, thereby entirely releasing J. L. Wilkinson from this note. The president of the bank further testified that it was agreed that upon the execution of the new note and deed of trust by Mrs.

M. C. Wilkinson, the former deed of trust would be satisfied, canceled and surrendered, thereby causing the later deed of trust to become the·first lien upon the property covered thereby, but that when the new deed of trust was delivered to the bank, the bank officials, through inadvertence and as a result of negligence on their part, delivered to J. L. Wilkinson the prior note and deed of trust executed by Mrs. M. C. Wilkinson to the said J. L. Wilkinson, without placing thereon any notation showing that this note had been paid and satisfied, or that the said note and deed of trust had ever been held by the bank.

J. L. Wilkinson testified that there was no agreement between him and the officers of the bank that the note and deed of trust executed in his favor by his mother was to be paid or satisfied by the new note and deed of trust executed by her to the bank, but that, on the contrary, it was distinctly understood and agreed that the lien of the deed of trust to the bank was to be secondary to that of the deed of trust in his favor, and that the note and deed of trust in his favor was to be surrendered to him as live instruments constituting a first lien on the property, as indicated and shown by the record thereof in the chancery clerk's office. Mrs. M. C. Wilkinson testified that when she executed the deed of trust to the bank she understood that it was a second lien on her property and that it was intended to and did secure a *bona-fide* indebtedness to her son which she owed him in addition to the two thousand two hundred fifty dollars secured by the first deed of trust, and that the indebtedness secured by each of these deeds of trust was due and owing by her at the time of the trial. J. L. Wilkinson likewise testified that the note and deed of trust to the bank was in settlement and satisfaction of an indebtedness due him by his mother, which was entirely separate from and additional to the indebtedness secured by the first deed of trust.

Some months after the execution of the deed of trust to the bank and the surrender of the old note and deed

of trust to J. L. Wilkinson, the payee therein, the said
J. L. Wilkinson, assigned the note and deed of trust to
his brother, M. L. Wilkinson, as collateral security for a
note of about three thousand four hundred dollars, exe-
cuted by J. L. Wilkinson in favor of the said M. L. Wil-
kinson. Both J. L. and M. L. Wilkinson testified that
this three thousand four hundred dollar-note was given
for money loaned by M. L. Wilkinson to J. L. Wilkinson
at various times, the note including the sum of these loans
and accrued interest, and that these loans had been made
under an agreement between them that if J. L. Wilkin-
son was unable to repay the sum loaned whenever de-
manded, he would assign the indebtedness of his mother
to him as security for or in part payment of these loans.
M. L. Wilkinson also testified that he had no knowledge
whatever of the fact that the bank had ever held the note
and deed of trust which were assigned to him, that he did
not know and had no reason to suspect that the bank held
or claimed a first lien on the property covered by his deed
of trust, and that he had no knowledge whatever of the
fact that the bank held any deed of trust on the said
property.

The disputed question of fact as to what the agreement
between the bank and J. L. Wilkinson was as to the effect
of the deed of trust from Mrs. Wilkinson to the bank,
and as to the priority of the lien of this instrument, was
decided by the court below in favor of the bank; and
therefore, for the purpose of this decision, it must be
considered as settled that it was agreed between the par-
ties that the original indebtedness to J. L. Wilkinson was
to be satisfied by the execution of the new note and deed
of trust, and the bank was thereby to secure a first lien
on the property. However, with this fact settled in favor
of the bank, we are still of the opinion that under the
proof and law applicable thereto, the decree of the chan-
cellor establishing the priority of the lien of the bank's
deed of trust must be reversed.

Aside from whatever suspicion may be aroused on account of the relationship of the parties, there is no proof in this record to controvert the positive testimony that M. L. Wilkinson, the assignee of the prior deed of trust, had no knowledge of the existence of the second deed of trust, or of the claim of the bank that the first deed of trust had been paid and satisfied, or that it held a lien that was superior to the lien of the instrument which was assigned to him. Through the admitted gross negligence of the officials of the bank, this note and duly recorded deed of trust were placed in the hands of the payee in the instruments, without any sort of mark or notation thereon to indicate that they had been paid or in any manner satisfied or canceled, or that the lien of the deed of trust was not what is purported on its face and upon the records—a valid, subsisting, first lien on the property conveyed thereby.

Under these facts there are two principles which we consider applicable, either of which would require a reversal of the decree of the court below.

The note which the bank surrendered to the payee, J. L. Wilkinson, although overdue, was negotiable, and it seems to be the settled rule that the assignee of overdue negotiable paper takes it with notice of all the equities or defenses which the maker may have, but he does not take it with notice of the secret equities of third parties, or those arising out of collateral transactions.

In the case of *Gee* v. *Parks* (Tex. Civ. App.), 193 S. W. 757, this rule is clearly stated and many authorities are collated sustaining it, the language of the court upon this point being as follows:

"It is contended by appellant that appellee is affected with the equity of Mrs. Gee, for the reason that the note which he purchased from the trustee in bankruptcy was past due. The purchaser of a past-due note takes it with notice of any defense to the note which the maker may have, but does not take it with notice of the secret equities of third persons."

In the case of *Plymouth Cordage Co.* v. *Seymour,* 67 Minn. 311, 69 N. W. 1079, the rule is stated in the following language:

"The mere fact that the notes were past due when they were pledged to the trustees is not, it would seem, sufficient to charge them with notice of the equity of the plaintiff, a third party. The general rule is that a purchaser of past-due commercial paper takes it subject to all equities existing between the parties to the paper, but not to any latent equities in favor of a third party. A purchaser, however, with notice thereof, acquires only the title of his assignor; and the burden rests upon such purchaser to bring himself within the rule in favor of *bona-fide* purchasers. He is bound to deny notice of the prior equity, and prove his want of notice. This fact rests within his own knowledge."

In the case of *Beneficial Loan Ass'n* v. *Hillery,* 95 N. J. Law, 271, 113 A. 324, the Supreme Court of New Jersey said:

"Next, it is argued that the rule should be made absolute because the plaintiff was not a holder of the note in due course, not having acquired it before maturity and in good faith. It is true that the plaintiff is not a holder in due course within the meaning of the statutory definition, in that it did not acquire the instrument before maturity; but that fact is entirely immaterial in determining the plaintiff's right. The holder of a promissory note which comes into his hands after maturity takes it subject to all legal defences which the maker may have against its enforcement, but with that exception his right of recovery is as complete as if he was a holder in due course."

In the case of *Hanssen* v. *Pusey & Jones Co.,* 276 F. 296, a United States District Court of Delaware stated the rule in the following language:

"The second contention overlooks the doctrine that overdue paper is negotiable, and that an indorsee takes

the paper subject only to such equities as attach to the notes themselves, and that in his hands it is not subject to claims against the payee, or an intermediate indorser, arising out of collateral matters or independent transactions.   3 R. C. L. 1046; Daniel on Negotiable Instruments, section 725."

The case last above mentioned was appealed, and in affirming the judgment of the district court, the Circuit Court of Appeals of the Third Circuit, in a decision appearing in 279 F. 488, said:

"The general rule, or, perhaps, the common-law rule, followed by the Supreme Court of the United States in *National Bank of Washington* v. *Texas,* 20 Wall. 72, 22 L. Ed. 295, is stated by Mr. Justice SWAYNE as follows: 'The transferee of overdue negotiable paper takes it liable to all the equities to which it was subject in the hands of the payee, but those equities must attach to the paper itself, and not arise from any collateral transaction. A debt due to the maker from the payee at the time of the transfer cannot be set off in a suit by the indorsee of the payee, although it might have been enforced if the suit had been brought by the latter.'"

In the case of *National Bank of Washington* v. *Texas,* 20 Wall. 72, 22 L. Ed. 295, from which the Circuit Court of Appeals took the above-mentioned quotation, in a further discussion of this rule, the Supreme Court of the United States said:

"Chancellor KENT, speaking of this rule in this class of cases, says: 'The assignee can always go to the debtor and ascertain what claims he may have against the bond or other chose in action which he is about purchasing from the obligee, but he may not be able with the utmost diligence to ascertain the latent equity of some third person against the obligee. He has not any object to which he can direct his inquiries, and for this reason the assignee, without notice, of a chose in action, was preferred in the late case of *Redfearn* v. *Ferrier* (1 Dow..

50), to that of a third party setting up a secret equity, against the assignor. Lord Eldon observed in that case that if this were not so no assignment could ever be taken with safety.' "

Under the rule as announced in these authorities, we have reached the conclusion that since there is no testimony in the record to controvert the positive testimony of the assignee of the note and deed of trust that he had no notice or knowledge of the claim of the bank, arising out of a collateral transaction, the decree of the court establishing the priority of the lien of the deed of trust held by the bank must be reversed.

There is an additional proposition which we think, under the facts, requires a reversal of the decree. The bank through its proper officers, negligently placed this note and deed of trust in the hands of the payee, J. L. Wilkinson, without any mark or notation thereon to in any way indicate that the note had been paid or that the lien of the deed of trust had been canceled or in any way subordinated to the lien of the deed of trust held by the bank. By the neglect of these officers, these instruments were placed in the hands of the payee of the note in such form and condition that he was thereby clothed with the apparent authority to negotiate the note and security. The deed of trust was properly recorded in the office of the chancery clerk of the county, and no notation was ever placed upon the records to indicate that this deed of trust had ever been held by the bank, or to indicate that the lien thereof had been subordinated to any other lien. In view of the fact that the testimony is uncontroverted that the assignee of these instruments had no notice or knowledge of the equities of the bank, or its claim to a superior lien, we think the loss, if any, resulting from the negligence of its officers, must be borne by the bank. This doctrine was recognized by this court in the case of *Hall* v. *Box*, 131 Miss. 218, 94 So. 221, in which the court said:

"We are of the opinion that the plaintiff should have been given the instructions set out announcing the principle that if the defendant was negligent in the transaction that he would be liable on the note in the hands of a *bona-fide* purchaser. The issue should have been submitted to the jury as to whether or not, under all of the facts and circumstances, Box was guilty of negligence in failing to exercise the care and prudence that an ordinary man would have exercised. We think that a party who signs a note without exercising such ordinary and reasonable care as an ordinarily prudent person should under the circumstances, and his note passes into the hands of a purchaser for value without notice, and he cannot set up a defense that involves his negligence as against such *bona-fide* purchaser."

The decree of the court below will therefore be reversed and the cause remanded.

*Reversed and remanded.*